**DON DRUM REAL ESTATE COMPANY,**
**Appellant,**

**v.**

**John W. HUDSON, Appellee.**

No. 17587.

Court of Civil Appeals of Texas,
Dallas.

March 12, 1971.

Rehearing Denied April 9, 1971.

Bruce W. Bowman, Jr., Turner, Rodgers, Winn, Scurlock & Sailers, Dallas, for appellant.

Paul K. Hyde, Martin T. Burnham, Hyde, Tucker, Gano, Alexander & Brown, Dallas, for appellee.

GUITTARD, Justice.

This is a suit by a real estate broker against the owner of a residence to recover a commission for negotiating a sale which was not completed. Summary judgment was rendered for the defendant and the plaintiff broker has appealed. The principal question is whether the rule permitting extrinsic evidence to interpret a written contract extends to proof of a contemporaneous oral promise concerning a matter not covered by the language of the contract.

Plaintiff alleges that defendant signed a written listing agreement authorizing plaintiff to sell defendant's home. The listing contract is not before us. The record does contain a written contract of sale from defendant John W. Hudson and wife to Floyd Brown and wife, signed also by the broker, and providing for a commission of six per cent of the sale price. The price is $10,500, of which $350 is recited as paid, and the contract further recites: "* * * the balance to be paid as follows: Purchaser to obtain an F.H.A. insured loan in the amount of $10,150." The contract further provides: "There are no agreements, conditions, stipulations or representations verbal or otherwise, other than those contained herein."

In his affidavit in support of the motion for summary judgment, defendant admits that he signed the contract, but says: "[S]ubsequently an Inspector from the F.H.A. came to my home, inspected it and later advised me that it would be necessary that I replace the carpets, repaper the kitchen and paint the woodwork and repair the bathroom ceiling and repaint the bathroom. When I learned that it would be necessary for me to spend all of that money just to sell the house, I refused to sell the house and I never did nor have I ever agreed to prepare my house for sale under an F.H.A. contract."

In response to the motion, plaintiff filed an affidavit by Irene Dossche, the salesman who negotiated the deal and drew the

contract, stating: "[B]oth Mr. and Mrs. Hudson promised unequivocally before signing the sales authorization contract with Don Drum Real Estate Company, before signing the contract of purchase on their house (dated May 14, 1969), and after having signed the contract of purchase on their house (dated May 14, 1969) to make repairs to their home that were required to be made by the FHA appraisal report."

■ Plaintiff's first point is that the commission was due upon signing the contract of sale, regardless of whether defendant completed the sale. Cases are cited to the effect that where the broker produces a purchaser whom the owner accepts by signing a binding contract with him, the broker has earned his commission and the owner assumes the risk of the purchaser's nonperformance. Frances v. Foster, 113 Tex. 521, 260 S.W. 1023 (1924); McNeil v. McLain, 272 S.W.2d 573 (Tex.Civ.App., Fort Worth 1954, no writ). These cases did not involve sales upon condition. Where the contract is subject to a condition, the broker who negotiated the contract is not entitled to a commission unless the condition is met, because he has not performed his agreement to produce a purchaser willing and able to buy on the owner's terms. Warren v. Russell, 206 S.W.2d 132 (Tex. Civ.App., Austin 1947, no writ); Roquemore v. Talley, 451 S.W.2d 319 (Tex.Civ. App., Dallas 1970, writ ref'd n. r. e.). The present contract does not expressly provide that it is conditioned upon obtaining an FHA insured loan for $10,150 or even that it is "subject to" obtaining such a loan. However, all parties, including the broker, apparently understood that the contract was not binding unless such a loan was obtained, and no contention is made that the purchaser was unconditionally bound to complete the purchase and pay the purchase price regardless of whether he was able to obtain an FHA insured loan. Consequently, we treat the contract as conditional in that respect.

■ The main thrust of plaintiff's argument is that the summary judgment was improper because there is a fact issue as to whether defendant prevented completion of the sale by refusing to carry out his oral promise to make the repairs required by the FHA. We recognize the rule that a broker who performs his contract of employment by producing a purchaser able and willing to buy on the owner's terms is entitled to his commission if completion of the sale is prevented by fault of the owner, as by the owner's failure or inability to comply with the contract of sale, or by mutual rescission by the owner and purchaser. West Realty & Investment Co. v. Hite, 283 S.W. 481 (Tex.Com.App.1926); Miller v. Carlson, 390 S.W.2d 64 (Tex.Civ. App., Texarkana 1965, writ ref'd n. r. e.); Caneer v. Martin, 238 S.W.2d 828 (Tex. Civ.App., Waco 1951, writ dism'd). In reviewing the summary judgment for defendant, we assume that defendant did promise orally to make the repairs required by the FHA. If that promise was legally binding on him and he prevented the sale by failure to perform it, he is liable for the commission.

In this connection plaintiff says that defendant is liable for the commission even though the contract of sale may not have been binding as between him and the purchaser, citing Mason v. Abel, 215 S.W.2d 377 (Tex.Civ.App., Dallas, 1948, writ ref'd n. r. e.), in which this court held that a broker is entitled to his commission, even though the contract of sale may be unenforceable under the Statute of Frauds because not in writing. We do not regard that decision as applicable here, since it held that an oral contract for sale of land is valid as between seller and purchaser in the absence of a pleading of the Statute of Frauds, and that where the broker has procured a purchaser able and willing to buy on the owner's terms the owner cannot avoid liability for the commission by refusing to complete the sale, even though no written contract of sale had been signed. In the present case we do not have an oral

contract of sale, but a written contract signed by the broker as well as by the owner and the purchaser. The petition alleges no separate contract between broker and owner whereby the owner agreed to make whatever repairs might be required to enable the purchaser to obtain a loan. Our question then, is whether the owner is bound by an oral promise not contained in the sale contract.

Plaintiff seeks to avoid application of the parol evidence rule by contending that the written contract contains an ambiguity which, if not apparent on the face of the contract, at least appears when an attempt is made to apply the contract to the particular circumstances of this case, and that the oral promise is admissible to explain this ambiguity. Since there is no language in the contract expressly dealing with repairs, we must decide whether the absence of any provision in the written contract on this point creates an ambiguity explainable by oral testimony.

The basic question is, what is an ambiguity? Mere uncertainty as to the parties' intention does not necessarily establish an ambiguity of the kind that is subject to explanation by extrinsic evidence. A legal ambiguity exists in a written contract only when it contains language susceptible of more than one meaning, considered in the light of all the provisions of the document. It is well settled that where language of a written contract is ambiguous in the sense that it is reasonably susceptible of more than one meaning, the intention of the parties may be determined from extrinsic evidence. Trinity Universal Ins. Co. v. Ponsford Brothers, 423 S.W.2d 571 (Tex.Sup.1968); Neece v. A. A. A. Realty Co., 159 Tex. 403, 322 S.W.2d 597 (1959); Lone Star Gas Co. v. X-Ray Gas Co., 139 Tex. 546, 164 S.W.2d 504 (1942); McCormick & Ray, Texas Law of Evidence, § 1685, p. 530. The Supreme Court of Texas has adopted the view that a contract is not ambiguous if it is so worded that it can be given a certain or definite meaning or interpretation, and

may be considered ambiguous only when the application of pertinent rules of construction to the face of the instrument leave it genuinely uncertain as to which of two meanings is the proper meaning. Universal C. I. T. Credit Corp. v. Daniel, 150 Tex. 513, 243 S.W.2d 154 (1951); Lewis v. East Texas Finance Co., 136 Tex. 149, 146 S.W.2d 977 (1941).

However, the Supreme Court has recognized that even where a written contract seems to be plain and unambiguous on its face, extrinsic evidence of surrounding circumstances may be admitted for the purpose of applying the contract to the subject with which it deals, and if the meaning of the language is then uncertain, the intention of the parties may be shown by oral testimony. Scott v. Walden, 140 Tex. 31, 165 S.W.2d 449, 154 A.L.R. 1 (1942); Guardian Trust Co. v. Bauereisen, 132 Tex. 396, 121 S.W.2d 579 (1938); First Nat. Bank of Amarillo v. Rush, 210 S. W. 521 (Tex.Com.App.1919, holding approved). But the rule permitting extrinsic proof of the circumstances of a contract for the purpose of applying it to the subject matter does not extend to oral evidence of prior negotiations where there is no uncertainty in the meaning of the language in the writing. Murphy v. Dilworth, 137 Tex. 32, 151 S.W.2d 1004 (1941). Preliminary negotiations are considered merged into the written contract, and if the terms of the writing are not in themselves ambiguous, a prior or contemporaneous oral agreement cannot be proved for the purpose of imposing obligations in addition to those provided in the written contract, in the absence of allegations and proof of fraud, accident or mistake in merging the oral agreement into the written contract. Firestone Tire & Rubber Co. v. Fisk Tire Co., 131 Tex. 158, 113 S.W. 2d 175 (1938); Aero-Gas Refining Co. v. Fisk Tire Co., 137 S.W.2d 191 (Tex.Civ. App., El Paso 1940, writ ref'd); Alamo Lumber Company v. Fahrenthold, 58 S.W. 2d 1085 (Tex.Civ.App.; Beaumont 1933, writ ref'd).

■ A court may not interpolate terms or provisions into a contract and thus, under the guise of interpretation, make contracts for the parties. Neece v. A. A. A. Realty Co., 159 Tex. 403, 322 S.W.2d 597 (1959, see footnote at p. 600). Moreover, it has been held that if a written contract does not even purport to deal with a particular subject, the failure of the contract to express the parties' intention on that subject does not permit extrinsic proof of such intention on the theory that the writing is ambiguous, since the rule permitting oral testimony to explain an ambiguous writing has application only when the intention is expressed but in uncertain language susceptible of more than one interpretation. Bauer v. Taylor, 118 S.W.2d 826 (Tex.Civ.App., Eastland 1938, writ ref'd); 2 McCormick & Ray, Texas Law of Evidence, 2d Edition, § 1685, p. 530. Otherwise, it would always be possible to add terms and impose additional obligations simply by showing that an oral agreement was made about a matter which the written contract does not cover.

In analyzing the problem, two distinctions may be helpful. The first is that between "intention" and "meaning." Professor Wigmore has pointed out that the actual intention or subjective will of a person in using a particular word can seldom be considered for juristic purposes, since he is responsible for the word he used, and a court will not ordinarily inquire into whether he actually intended to use that word rather than some other. The question is the meaning or sense in which he used the word, that is, his association between that word and some external object or circumstance of which the word is a symbol. The process of legal interpretation is one of determining the sense in which the words were used. 9 Wigmore on Evidence, 3d Edition, § 2459, pp. 183–185. This is what the courts have in mind when they say that the cardinal rule of construction is to determine the parties' intention, since they ordinarily insist that intention be determined from the written words rather than from oral testimony about what the parties actually intended. Estes v. Republic National Bank of Dallas, 462 S.W.2d 273 (Tex.Sup.1970); Cutrer v. Cutrer, 162 Tex. 166, 345 S.W.2d 513 (1961); Davis v. Andrews, 361 S.W.2d 419 (Tex.Civ. App., Dallas 1962, writ ref'd n. r. e.).

■ There is also a distinction between "interpretation" and "construction" although these words are often used interchangeably. "Interpretation" of a contract is the process of determining the meaning of the language, whereas "construction" is the determination of the legal effect of the contract. 3 Corbin on Contracts, § 534, pp. 7 to 15; 4 Williston on Contracts, 3d Ed., § 602, pp. 320 to 325. Proof of extrinsic expressions of the parties' intention is proper for the interpretation of the language where the meaning is uncertain, but not for determining the contract's legal effect, except insofar as such determination requires interpretation of the language. According to Professor Corbin, when a court "fills in the gaps" of an agreement with respect to matters concerning which the parties express no intention, the process should not be called interpretation. Op. cit., at page 11.

■ We conclude that where proof is offered of a prior or contemporaneous oral promise about a matter concerning which the written contract is silent, the question is not one of interpreting the language of the writing, but of determining the legal effect of the writing, and in particular of determining whether the effect of the written contract is to exclude the oral promise. Such an oral promise may be effective if the writing does not purport to be a complete and final integration of the parties' agreement, or if the oral promise relates to a collateral matter which the parties might naturally have agreed upon separately from the writing. Hubacek v. Ennis State Bank, 159 Tex. 166, 317 S.W.2d 30 (1958). The present contract contains an express declaration of integration, and there is no contention that it does not purport to be an integrated contract. Neither is

there any contention or pleading that the oral promise to repair was enforceable as a collateral agreement.[1] Moreover, there is no contention here that the language of this contract gives rise to an implied duty on the part of defendant to make repairs as required by the FHA. Plaintiff's argument in this regard is limited to the contention that the contract is ambiguous as to whether the purchaser or the seller has the burden of making repairs required by the FHA and that the oral promise is admissible to explain that ambiguity.

█ The only language of the contract said to be ambiguous is: "Purchaser to obtain an F.H.A. insured loan in the amount of $10,150." Is this language ambiguous with respect to whether one party or the other has the burden to make repairs? We think not. It is difficult to see how these words can be taken by any process of interpretation to mean that defendant has agreed to make repairs. That is not one of the meanings of which the quoted words are susceptible.[2] In our opinion, the oral promise, otherwise unenforceable, should not be engrafted upon the written contract under the guise of interpreting language not susceptible of the interpretation suggested.

Since the contract, as we construe it, does not bind defendant to make repairs, he cannot be said to have prevented completion of the contract by failure to make them. The case is one of a sale that did not go through because it was made on a condition which has not been met. Thus it appears from the record as a matter of law that no commission is due.

The judgment of the district court is affirmed.

---

1. This would present a question of some difficulty. See Tucker v. Boyd, 156 Tex. 262, 293 S.W.2d 841 (1956).

2. We are reminded of the colloquy between Alice and Humpty Dumpty in Lewis Carroll's "Through the Looking-Glass":
   "There's glory for you!" [said Humpty Dumpty.]
   "I don't know what you mean by 'glory,'" Alice said.
   Humpty Dumpty smiled contemptuously. "Of course you don't—till I tell you. I meant 'there's a nice knock-down argument for you!'"

   "But 'glory' doesn't mean a nice knock-down argument,'" Alice objected.
   "When *I* use a word," Humpty Dumpty said, in rather a scornful tone, "it means just what I choose it to mean—neither more nor less."
   "The question is," said Alice, "whether you *can* make words mean so many different things."
   "The question is," said Humpty Dumpty, "which is to be master—that's all."