L. C. WAHLENMAIER et al., Appellants,

v.

AMERICAN QUASAR PETROLEUM
COMPANY et al., Appellees.

No. 6388.

Court of Civil Appeals of Texas,
El Paso.

Dec. 18, 1974.

Rehearing Denied Jan. 8, 1975.

Garland Casebier, Midland, John F. Tomlin, Pecos, H. J. Rucker, Midland, for appellants.

Lynch, Chappell, Allday & Aldridge, Martin L. Allday, Randall Lundy, D. Bruce Pope, Midland, for appellees.

## OPINION

WARD, Justice.

The plaintiffs and defendants filed motions for summary judgment and the one filed by the defendants was granted. The plaintiffs are the owners of overriding royalty interests retained in assignments of oil and gas leases covering two 40 acre tracts of land and filed suits under the Uniform Declaratory Judgments Act, Art. 2524–1, Vernon's Tex.Rev.Civ.Stat.Ann., to construe the meaning of identical overriding royalty reservation clauses contained in the assignments. The trial Court held in favor of the defendants that the assignments are not ambiguous and that the size of the plaintiffs' overriding royalty interests reserved under the terms of the assignments were to be computed upon the barrels of oil produced per month per well. We affirm the judgment of the trial Court.

The reservations of the overriding royalty in the assignments of the oil, gas and mineral leases are worded to provide that the overriding royalty would be determined by a sliding scale and read as follows:

"SAVE AND EXCEPT that Assignor excepts from this assignment and reserves to himself, his heirs and assigns, free and clear of all cost of drilling, development and operation, except taxes, an Overriding Royalty which is to be computed as follows:

(a) ⅛th of ⅞ths of all oil and gas produced, saved and sold from the above described land under the terms of the above described lease in all months in which the production averages in excess of 350 barrels per well; or

(b) ⅟₁₆th of ⅞ths of all oil and gas produced, saved and sold from the above described land under the terms of the above described lease in all months in which production averages 350 barrels or less per well."

For some time the oil and gas leases were held by shallow production of oil alone and royalty was paid on the larger ⅛th overriding royalty when oil production exceeded 350 barrels per month per well. Beginning in 1966, the barrels of oil production per month per well averaged 350 barrels or less and the overriding royalty interest owners have since been paid the reduced scale of overriding royalty interest of ⅟₁₆th.

In January, 1972, the parties entered into a pooling agreement and the two 40 acre leases in question became a part of a single 640 acre unit. In December, 1972, a well, known as the American Quasar-Sabine Gas Unit Well #1, was completed on the unit and has continuously produced large quantities of dry gas. The monthly gas production has not been used to calculate the size of the Appellants' overriding royalty interest under the sliding scale overriding royalty provisions of the lease assignments. However, the Appellants have always been paid their overriding royalty on both the gas production as well as the oil production but at the reduced rate of ⅟₁₆th.

The only question before this Court is how to compute the size of the overriding royalty interests reserved. Because gas is not measured in "barrels" and monthly oil production is presently less than 350 barrels of oil per well the defendants contend that the overriding royalty interest remains at ⅟₁₆th.

The Appellants offered summary judgment proof that the amount of gas produced by the unit and allocated to each 40 acre tract would exceed 18,000,000 cubic feet a month. As gas can be easily liquefied, this production would equal 5,347 barrels of liquid gas per month for each 40 acre tract. That the value of production attributable to each 40 acre tract would be in excess of $4,950.00. Additional summary judgment proof was to the effect that at the time the assignments were made the parties were trying to solve an economic problem. Appellants contend that the real concern of the parties was as to the value of the production coming out of the well and as production decreased the royalty burden would eventually become intolerable since it was delivered free of cost. Thus, the sliding scale reservation was adopted as the solution.

The Appellants' first three points relate to this evidence. The first point is that the Court erred in granting the summary judgment because the plain language of the reservation shows that oil and gas was reserved and the term "production" to be measured in barrels refers to both oil and gas production. The second point is that the Court erred as to granting the summary judgment as the undisputed facts show that the value of production of oil and gas attributable to each 40 acre tract of land was far in excess of 350 barrels per month and that the wording of the reservations demands that the sliding scale computation be based upon the "value" of the production of both oil and gas. By the third point, the Appellants contend that the reservations are ambiguous and the trial

Court should have considered the extraneous evidence to determine the true intent of the parties.

■ What ·is meant when the parties say that "production averages in excess or less than 350 barrels per well"? The problem is one of proper interpretation of the contract as opposed to one of construction. Interpretation of a contract is the process of determining the meaning of the language used as opposed to construction which is the determination of the legal effect of the contract. Proof of extrinsic expressions of the parties' intention is proper for the interpretation of the language where the meaning is uncertain. Don Drum Real Estate Company v. Hudson, 465 S.W.2d 409 (Tex.Civ.App.—Dallas 1971, no writ). The Appellants contend that the meaning is uncertain and their evidence is offered only to illuminate the meaning. The defendants state that the Appellants want to go too far and under the guise of interpretation want to add terms and impose additional obligations which the written contract does not cover. In the process of fixing a meaning to a writing, a court must be guided by certain standards. Normally, a court can assume that the parties used the words in their popular or normal acceptation and can apply that standard. 2 McCormick & Ray, Texas Evidence § 1682 (2d ed. 1956). A barrel is said to mean a container of 31½ gallons and both barrels and gallons are used to measure liquids and some solids but not gas. Webster's New Twentieth Century Dictionary (unabridged 2d ed.). In the popular and normal sense, barrels in an oil and gas transaction refer to oil and not gas. And it is in this relation that we accept the words used.

Texas has adopted the standard gas measurement law which requires that natural gas be measured in cubic feet and provides that all sales, purchases and deliveries of gas by volume shall be calculated on the basis of the standard cubic foot of gas as defined therein. Art. 6066b, Tex.Rev.Civ. Stat.Ann. Defendants argue that as gas production must legally be measured in cu-

bic feet and since the reservation speaks of production in "barrels" then the reservation can only mean "barrels of oil." This may or may not be true but to incorporate such a law as being a part of this contract has been criticized as artificial. 3 Williston on Contracts, Revised Edition, § 615.

To us, there is no uncertainty to the meaning of the language used. It may even be that the parties were concerned with the production of oil from the leases and gas was not thought of at the time. What the Appellants would have us do is to make a contract for the parties in regard to a matter not contemplated by them at the time. No ·ambiguity arises here merely from a failure to speak on a certain subject.

■ The rule is stated in Don Drum Real Estate Company v. Hudson, supra, at 413, as follows:

"A court may not interpolate terms or provisions into a contract and thus, under the guise of interpretation, make contracts for the parties. Neece v. A. A.A. Realty Co., 159 Tex. 403, 322 S.W. 2d 597 (1959, see footnote at p. 600). Moreover, it has been held that if a written contract does not even purport to deal with a particular subject, the failure of the contract to express the parties' intention on that subject does not permit extrinsic proof of such intention on the theory that the writing is ambiguous, since the rule permitting oral testimony to explain an ambiguous writing has application only when the intention is expressed but in uncertain language susceptible of more than one interpretation. Bauer v. Taylor, 118 S.W.2d 826 (Tex. Civ.App., Eastland 1938, writ ref'd); 2 McCormick & Ray, Texas Law of Evidence, 2d Edition, § 1685, p. 530. * * *"

■ There being no ambiguity, the construction of the assignments is a question of law for the Court and the effect is also clear. City of Pinehurst v. Spooner Addition Water Company, 432 S.W.2d 515

**394**

(Tex.1968). The Appellants' first three points are overruled.

■ The Appellants next contend that the summary judgment effected a forfeiture of the Appellants' ⅛th overriding royalty interest and that an ambiguous provision cannot be construed as a forfeiture provision. As stated, we have determined that the provision is not ambiguous. The ⅛th interest is contingent upon the amount of production in barrels of oil. It ceased at ⅛th and became ⅟₁₆th when oil production fell to 350 barrels of oil or less per well. It will cease at ⅟₁₆th and become ⅛th when production exceeds 350 barrels of oil per well. It is still an overriding royalty. No forfeiture is involved. Roberts v. Lone State Producing Company, 369 S.W.2d 373, at 376 (Tex.Civ.App.—Eastland 1963, no writ).

By the final point of error, the Appellants complain of the trial Court's failure to grant the motion for summary judgment filed by the Appellants. Their contention is that the pooling agreements later executed by the parties altered the sliding scale royalty provisions and granted the Appellants a proportionate ⅛th royalty on all gas produced from said unit.

■ The defendants object to our considering this point because the plaintiffs' pleadings for declaratory judgment were limited to a construction of the royalty reservations in the lease assignments. The pooling agreements are not only absent from the pleadings but are not referred to in the Appellants' motions for summary judgment and are not even mentioned in the findings given by the trial judge in granting the summary judgment for the defendants. The defendants argue that the Appellants lay behind the log in the trial Court and should not be permitted to advance this argument for the first time on appeal. However, the pooling agreements were a part of the summary judgment proof and were before the Court as summary judgment "evidence" at the time of the hearing. Regardless of the merits of the defendants' objection, we will consider the point, in view of the granting of the summary judgment in favor of the defendants.

The pooling agreements executed by the overriding royalty owners contain a proportionate reduction clause providing for proportionate reduction if the oil and gas lease covers less than the full mineral estate and provides for further proportionate reduction "in the ratio that acreage contained within the above described land bears to the total amount of acreage included within the particular unit involved. *The share of production of the undersigned shall be computed in the same manner as that of the Lessor under the above lease.*" (Emphasis ours.)

■ The Appellants contend that the last sentence completely altered the sliding scale royalty assignment so that the Appellants should be paid a ⅛th royalty, the same as the lessors of the lease. We disagree. The pooling agreements do nothing but allow a pooling of the leases in question. There is no language present granting an increase in royalty to the Appellants.

The language relied upon by Appellants in the pooling agreements simply has nothing to do with the size of the fractional interest of the overriding royalty. It is a part of the *proportionate reduction clause,* and clearly means that if the lease from which the overriding royalty is carved is determined to cover less than the full mineral estate, then the overriding royalty will be paid on only the reduced interest covered by that lease, and, further, since the two leases involved constitute only a part of a 640 acre pooled gas unit, such interests shall be further reduced in the identical manner that the royalty owners' interests are reduced by virtue of the pooling. The "share of production" of the overriding royalty owners is "computed in the same manner as that of the Lessor under the above lease" only in the sense that if the lease covers less than the full mineral estate, everyone's (Lessor's and Overriding Royalty Owner's) fractional share of pro-

duction from the unit is computed only on the amount of minerals actually covered by the lease.

From Webster's New Twentieth Century Dictionary (unabridged 2d ed.), "compute" means to "determine" or "ascertain the amount"; "manner" means "the way in which anything is done" and lists "method" as a synonym. "Ascertaining the amount" of the overriding royalty owner's share of production in the same "manner" or "method" as that of the lessor doesn't mean that it will equal that of the lessor.

Finally in these leases, the oil and gas leases are executed by the owners of the soil as agents for the State of Texas which is the only lessor, and the lessor is entitled to ⅟₁₆th share of production. Greene v. Robison, 117 Tex. 516, 8 S.W.2d 655 (1928). Even if the Appellants were correct in this last contention, they have made no gain on their present overriding royalty of ⅟₁₆th.

The point is overruled, and the judgment of the trial Court is affirmed.

OSBORN, J., not sitting.