V/W REALTY SALES AGENCY, Appellant,

v.

LONG MEADOWS COUNTRY CLUB, INC., Appellee.

No. 1049.

Court of Civil Appeals of Texas, Corpus Christi.

May 27, 1976.

Rehearing Denied June 17, 1976.

Ronald L. Ramey, Houston, for appellant.

Sam S. Minter, Minter & Mahon, Houston, for appellee.

## OPINION

YOUNG, Justice.

This is a suit by a real estate broker against the owner of a golf course with attendant stock and equipment to recover a commission for negotiating a sale which was not completed. In a non jury trial, the trial court rendered judgment for the plaintiff for $5,000.00 instead of $90,000.00 sought by the plaintiff. The plaintiff broker has appealed.

In a written contract of sale, dated March 22, 1973, John Jamail agreed to buy from Long Meadows Country Club, Inc., 126.58 acres of land and the improvements thereon together with an inventory of goods and an accumulation of equipment. The purchase price of $1,500,000.00 was to be paid all in cash at the time of closing of which $10,000.00 was initially deposited, as part payment, with Southwest Land Title Company. Closing was to be effected within 90 days from the date of the contract. Jamail, the president of Long Meadows, and a partner of V/W Realty Sales Agency all signed the contract.

The pertinent clauses about the real estate commission read in part as follows: ". . . Should the Purchaser fail to consummate this contract as specified for any reason, except title defects, Seller shall have the right to retain said cash deposits as liquidated damages for the breach of this contract, and shall pay to Agent therefrom the sum of $5,000.00 or Seller may enforce specific performance of this contract.

\* \* \* \* \* \*

Seller agrees to pay the undersigned duly authorized agent a commission of $6% of sales price in cash for negotiating this sale. . . ."

When the 90-day time for closing arrived, Jamail defaulted. Then followed a series of lawsuits and ancillary activities involving

Long Meadows, Jamail and the property under contract.

After Jamail's default, Long Meadows filed suit on July 25, 1973, to enforce specific performance. On August 24 Long Meadows and Jamail by an extension agreement postponed the closing date of the contract of sale until September 20. That suit was then dismissed on motion of Long Meadows. On the new closing date, Jamail again defaulted.

Long Meadows thereafter filed another suit on November 2 to enforce specific performance which suit was dismissed on January 9, 1974. Later Jamail filed a suit on January 28 to enforce specific performance against Long Meadows.

In the meantime Jamail, as debtor, had filed proceedings on November 28, 1973, for an arrangement in the bankruptcy court at Houston. The bankruptcy judge on March 5, 1974, held, among other things, that Jamail had defaulted on the original earnest money contract and the extension thereof; that Jamail had no claim of title or interest in the subject property; and that Long Meadows was entitled to the $10,000.00 earnest money deposited with the title company.

Subsequently, the title company by letter tendered to V/W Realty the $5,000.00 (one-half of the earnest money deposit) provided in the contract of sale. V/W Realty refused this tender and thereafter filed suit against Long Meadows seeking $90,000.00, being 6% of the contracted purchase price of $1,500,000.00.

The parties went to trial primarily on stipulated facts. After a non jury trial, the trial court rendered judgment for V/W Realty against Long Meadows for $5,000.00 of the $10,000.00 held on deposit by the title company. From that judgment plaintiff V/W Realty appeals.

In one point of error, the appellant asserts error by the trial court in granting judgment for $5,000.00 plus costs instead of $90,000.00. In that regard, the appellant says that when it produced a purchaser acceptable to Long Meadows as shown by the signing of the contract dated March 22, 1973, the 6% commission, or $90,000.00, was thereby earned by it as the broker.

In support of its position, the appellant cites *Stevens v. Karr*, 119 Tex. 479, 33 S.W.2d 725 (1930); *Frances v. Foster*, 113 Tex. 521, 260 S.W. 1023 (1924, opinion adopted); *McPherson v. Osborn*, 475 S.W.2d 804 (Tex.Civ.App.—Amarillo 1971, no writ); *Don Drum Real Estate Company v. Hudson*, 465 S.W.2d 409 (Tex.Civ.App.—Dallas 1971, no writ); *McNeil v. McLain*, 272 S.W.2d 573 (Tex.Civ.App.—Fort Worth 1954, no writ); *Peters v. Coleman*, 263 S.W.2d 639 (Tex.Civ.App.—Fort Worth 1953, writ ref'd n. r. e.); *Caneer v. Martin*, 238 S.W.2d 828 (Tex.Civ.App.—Waco 1951, no writ); *Jones v. Parker*, 26 S.W.2d 742 (Tex.Civ.App.—Austin 1930, no writ).

■ Some of those cases generally support the recognized rule that when a broker produces a purchaser whom the owner accepts by signing a binding contract with him, the broker has earned his commission and the owner assumes the risk of the purchaser's nonperformance. *Frances v. Foster*, supra; *Don Drum Real Estate Company v. Hudson*, supra; *McNeil v. McLain*, supra.

■ And some of appellant's cited cases agree with the well established principle that when a broker produces a purchaser able and willing to buy on the owner's terms, the broker is entitled to his commission if completion of the sale is prevented by fault of the owner, as by the owner's failure or inability to comply with the contract of sale, or by mutual recission by the owner and purchaser. *Stevens v. Karr*, supra; *McPherson v. Osborn*, supra; *Don Drum Real Estate Company v. Hudson*, supra; *Peters v. Coleman*, supra; *Caneer v. Martin*, supra; *Jones v. Parker*, supra.

■ But we deem the applicable rule in our case to be that even though a real estate agent or broker has produced a purchaser who contracts to buy on the owner's terms, if the contract provides that upon the failure of the purchaser to comply, the owner has the option of retaining the ear-

nest money as liquidated damages and is required to divide it with the agent, then if the owner exercises that option, the agent is limited to his share of the earnest money and he may not recover a commission based on a percentage of the purchase price. *Shiner v. Naylor*, 185 S.W.2d 237 (Tex.Civ. App.—San Antonio 1945, no writ); *Turner v. Pounds*, 43 S.W.2d 1104 (Tex.Civ.App.—Galveston 1931, no writ). See *Moorman v. Harris*, 217 S.W.2d 182 (Tex.Civ.App.—San Antonio 1949, no writ).

■ So when Long Meadows elected under the contract, as it eventually did in bankruptcy court, to retain the deposit of $10,000.00 as liquidated damages and to share it equally with V/W Realty instead of enforcing specific performance after Jamail defaulted, then as the court in *Shiner* at page 238 said: "The contract must be construed as providing . . . the agent would receive (his share of the earnest money) as liquidated damages in lieu of a claim for a commission. . . ." This is so even though the contract also contained a provision for a commission based upon a percentage of the selling price. Appellant's point of error is overruled.

The judgment of the trial court is affirmed.