**REVERSE; RENDER and REMAND and Opinion Filed February 28, 2023**



**In The**
**Court of Appeals**
**Fifth District of Texas at Dallas**

**No. 05-22-00386-CV**

**EBBY HALLIDAY REAL ESTATE, INC. D/B/A EBBY HALLIDAY REALTORS, DAVE PERRY MILLER REAL ESTATE, WILLIAMS TREW REAL ESTATE, Appellants**
**V.**
**MARK GIAMBRONE, Appellee**

**On Appeal from the 192nd Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. DC-21-17047**

## MEMORANDUM OPINION

Before Justices Reichek, Nowell, and Garcia
Opinion by Justice Garcia

This appeal arises from competing motions for summary judgment in a lawsuit seeking commission for the sale of real property pursuant to a termination of listing agreement (the "Termination Agreement"). In two issues, the first with multiple subparts, Ebby Halliday Real Estate, Inc. d/b/a Ebby Halliday Realtors, Dave Perry-Miller Real Estate, Williams Trew Real Estate ("Ebby Halliday") argues the trial court erred in denying its motion for summary judgment on its breach of contract claim and in granting Mark Giambrone's ("Seller's") motion for summary judgment, and that it is entitled to attorney fees. As discussed below, we reverse the

trial court's judgment, render judgment for Ebby Halliday, and remand to the trial court to determine attorney's fees.

## I.  Background

On September 2, 2020, Ebby Halliday and Seller entered an exclusive listing agreement (the "Listing Agreement"). The Listing Agreement provided for Ebby Halliday to receive a 6% commission for the sale of Seller's property and was to be in effect until September 2, 2021.

After five months, Seller received no serious offers to purchase his property. Accordingly, on February 3, 2021, Seller and the Ebby Halliday listing agent entered the Termination Agreement. The Termination Agreement provides that the Listing Agreement is terminated and the property will be removed from the Multiple Listings Service ("MLS"). The section of the Termination Agreement entitled "Termination Fees," provides in pertinent part:

(2) If Owner agrees to sell or lease the Property on or before _12/31/2021_ , by oral or written agreement or option, Owner will pay Broker at the time the Property is sold or leased a fee equal to (*check all that apply*):

☒ (a) ____3____ % of the sales price if Owner sells the Property.

☐ (b) _____ % of the gross rent over the term of the lease if Owner leases the Property.

☐ (c) _____

(3) The fees specified in Paragraph D(2) are payable only if Owner agrees to sell or lease the Property to: (*Check one box only.*)

☒ (a) anyone. _If owner decides to sell property we will_

☐ (b) _relist the property on or before 12/31/2021_

On June 11, 2021, Seller executed a listing agreement with Compass RE Texas, LLC ("Compass"), and on the same day, sold his property to John and Savannah Stevens, Co-Trustees of the J&S Stevens Revocable Trust ("Stevens").[1]

Ebby Halliday demanded its termination fee, specifically $167,250.00 as the 3% commission from the sale pursuant to the Termination Agreement. Seller refused to pay and Ebby Halliday initiated this suit for breach of contract. The title company deposited the escrow into the registry of the court.

Both Ebby Halliday and Seller filed traditional motions for summary judgment. The trial court granted Seller's motion, denied Ebby Halliday's motion, and dismissed Ebby Halliday's claims. Ebby Halliday now appeals from that judgment.

## II. Issues on Appeal

This appeal centers on the meaning and effect of the Termination Agreement; specifically, the meaning of the handwritten clause stating, "If owner decides to sell property we will relist the property on or before 12/31/21" (the "Relisting Language"). Ebby Halliday argues the trial court's summary judgment in favor of Seller was in error because: (i) the summary judgment evidence establishes that Seller breached the contract and Ebby Halliday is entitled to judgment as a matter of law, (ii) the procuring cause doctrine does not apply, (iii) the Termination

---

[1] The Ebby Halliday listing agent had previously shown Stevens the property during the term of the Listing Agreement.

Agreement complies with the statute of frauds, (iii) the Relisting Language in the Termination Agreement is not a condition precedent, and (iv) Seller's contract interpretation arguments fail.[2] Ebby Halliday further contends that should it prevail on its first issue, it is entitled to a remand for attorney fees.

### III.   Analysis

**A.     Standard of Review and Applicable Law**

In reviewing cross-motions for summary judgment, "we follow the usual standard of review for traditional summary judgments." *Lockheed Martin Corp. v. Gordon*, 16 S.W.3d 127, 132 (Tex. App.—Houston [1st Dist.] 2000, pet. denied). On appeal, we review summary judgments de novo. *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 215 (Tex. 2003); *Dickey v. Club Corp.*, 12 S.W.3d 172, 175 (Tex. App.—Dallas 2000, pet. denied). Traditional summary judgment is properly granted only when a movant establishes that there are no genuine issues of material fact and that it is entitled to judgment as a matter of law. TEX. R. CIV. P. 166a(c); *KPMG Peat Marwick v. Harrison Cnty. Hous. Fin. Corp.*, 988 S.W.2d 746, 748 (Tex.1999). When a plaintiff moves for summary judgment, he must prove that he is entitled to summary judgment as a matter of law on each element of his cause of action. *MMP, Ltd. v. Jones*, 710 S.W.2d 59, 60 (Tex.1986) (per curiam); *Affordable Motor Co. v. LNA, LLC*, 351 S.W.3d 515, 519 (Tex. App.—Dallas 2011,

---

[2] We reject Seller's argument that Ebby Halliday failed to challenge all summary judgment grounds. The record reflects otherwise.

pet. denied). When a defendant moves for summary judgment, it must either (1) disprove at least one element of the plaintiff's cause of action or (2) plead and conclusively establish each essential element of an affirmative defense to rebut plaintiff's cause. *Cathey v. Booth*, 900 S.W.2d 339, 341 (Tex.1995) (per curiam); *Ward v. Stanford*, 443 S.W.3d 334, 342 (Tex. App.—Dallas 2014, pet. denied).

To decide whether issues of material fact preclude summary judgment, evidence favorable to the non-moving party must be taken as true, every reasonable inference must be indulged in its favor, and any doubts resolved in its favor. *Sandberg v. STMicroelectronics, Inc.*, 600 S.W.3d 511, 521 (Tex. App.—Dallas 2020, pet. denied). The movant must conclusively establish its right to judgment as a matter of law. *See id.* A matter is conclusively established if reasonable people could not differ as to the conclusion to be drawn from the evidence. *City of Keller v. Wilson*, 168 S.W.3d 802, 816 (Tex. 2005).

The primary concern of a court in construing a written contract is to ascertain the true intent of the parties as expressed in the instrument. *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. CBI Indus., Inc.*, 907 S.W.2d 517, 520 (Tex.1995); *Monroe Guar. Ins. Co. v. BITCO Ins. Corp.* 640 S.W.3d 195, 198–99 (Tex. 2022). To do so, we look first to the contract's text. *See U.S. Metals, Inc. v. Liberty Mut. Grp., Inc.*, 490 S.W.3d 20, 23 (Tex. 2015). Terms in contracts are given their plain, ordinary, and generally accepted meanings, and contracts are to be construed as a whole to

harmonize and give effect to all provisions of the contract. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 662 (Tex. 2005).

The elements of a contract breach claim are (i) a valid contract, (ii) performance or tendered performance by the plaintiff, (iii) breach by the defendant, and (iv) damages sustained by the plaintiff as a result of that breach. *Dixie Carpet Installations, Inc. v. Residences at Riverdale, LP*, 599 S.W.3d 618, 625 (Tex. App.—Dallas 2020, no pet.). "A breach of contract occurs when a party fails to perform an act it has explicitly or impliedly promised to perform." *Gaspar v. Lawnpro, Inc.*, 372 S.W.3d 754, 757 (Tex. App.—Dallas 2012, no pet.). Whether a party has breached a contract is a legal question for the court, not a fact question for the jury if the facts of the parties' conduct are undisputed or conclusively established. *Grohman v. Kahlig*, 318 S.W.3d 882, 887 (Tex. 2010).

## B.    Procuring Cause

Seller argued that Ebby Halliday was not entitled to summary judgment because it was not the "procuring cause" of the sale. Relying on *Perthuis v. Baylor Miraca Genetics Labs, LLC,* 645 S.W.3d 228, 231 (Tex. 2022), Seller maintains that the procuring cause doctrine is a default rule that applies to every contract for a commission and is applicable in the instant case. Ebby Halliday responds that under the unambiguous terms of the Termination Agreement, the procuring cause doctrine does not apply, and Seller breached the contract by failing to pay the termination

–6–

fee. In other words, Ebby Halliday argues that the procuring cause doctrine does not apply when the parties expressly contract otherwise. We agree with Ebby Halliday.

The procuring cause doctrine was first articulated many years ago in *Goodwin v. Gunter*, 185 S.W. 295, 296 (Tex. 1916). There, the court held that the procuring cause doctrine provides "for a broker to be entitled to commission under a contract stipulating for their payment in the event of his sale of given property upon stated terms." *Id.* at 296. The *Perthuis* decision upon which Seller relies set forth the framework for determining when the doctrine applies. *Perthuis,* 645 S.W.3d at 231.

The *Perthuis* court observed that under the procuring cause doctrine, "the broker's entitlement to a commission vests on his having procured the sale, not on his actual involvement in a sale's execution." *Id*. at 234. To determine when the doctrine applies, courts must first determine whether the parties have the kind of contractual relationship to which the doctrine applies. *Id*. at 231. If so, courts next consider whether the parties displaced the doctrine by the terms of their contractual agreement. *Id.*

If a contract says nothing more than commissions will be paid for sales, the procuring cause doctrine is the default rule. *Id*. at 234. But the court expressly recognized that "parties may condition the obligation to pay a commission on something other than procuring the sale—they need only say so." *Id.* at 235. Recognizing that the parties' contract can "displace" the default rule, the court stated:

> Departing from the procuring cause doctrine's default rule requires no magic language. A contract merely needs to provide terms that are inconsistent with the default rule—which is to say, terms that in some way cabin the textually imposed contractual obligation to pay a commission.

*Id*. at 234.

It is not uncommon for parties to agree that a broker will still receive a commission after a listing is terminated without requiring that the broker procure the purchaser. *See, e.g., EID Corp. v. Fort Worth-Tarrant Sunbelt, Inc*., No. 02-05-61-CV, 2006 WL 1562665, at \*3, 6 (Tex. App.—Fort Worth June 8, 2006, no pet.) (mem. op.); *WesTex Abilene Assocs., L.P. v. Franco*, 3 S.W.3d 45, 46–47 (Tex. App.—Eastland 1999, no pet.). In the case at bar, as evidenced by the heading "Termination Fees" under which the provisions at issue appear, the amount at issue was a termination fee for Seller terminating the Listing Agreement. To this end, the Termination Agreement's terms "cabin" the commission-based termination fee obligation on Seller agreeing to "sell or lease the property to anyone" on or before December 31, 2021.  Thus, the contract provides not only that Ebby Halliday need not procure the sale, but also that Ebby Halliday need not be involved in the sale or listing at all. Rather, the obligation to pay Ebby Halliday the termination fee is triggered by Seller's actions—agreeing to sell or lease the property to anyone on or before the specified date. This contractual language is sufficient to displace application of the default rule. *See id* at 234.

As the *Perthuis* court observed, when the parties provide their own rules for paying or withholding commissions, "the procuring cause doctrine becomes irrelevant." *Id.* at 236. "When a contract prescribes otherwise-valid binding terms for how to handle post-termination commissions . . . the courts will enforce them." *Id.* at 237.

The express terms of the Termination Agreement displace the procuring cause doctrine and control the respective rights and obligations of the parties. Therefore, to the extent the trial court's summary judgment determination was based on Seller's procuring cause argument, it was in error.[3]

## C.      Statute of Frauds

Seller argues that the Termination Agreement does not comply with the statute of frauds requirements in the Texas Occupations Code. The Occupations Code requires:

> A person may not maintain an action in this state to recover a commission for the sale or purchase of real estate unless the promise or agreement on which the action is based, or a memorandum, is in writing and signed by the party against whom the action is brought or by a person authorized by that party to sign the document.

TEX. OCC. CODE ANN. § 1101.806(c). To comply with 1106.806, "an agreement or memorandum must: (1) be in writing and must be signed by the person to be charged with the commission; (2) promise that a definite commission will be paid, or must

---

[3] Seller also argues that, at a minimum, there is a fact issue about whether Ebby Halliday was the procuring cause of the sale. We reject this argument because procuring cause is irrelevant to this analysis. *See Perthuis*, 645 S.W.3d at 236.

refer to a written commission schedule; (3) state the name of the broker to whom the commission is to be paid; and (4) either itself or by reference to some other existing writing, identify with reasonable certainty the land to be conveyed." *Litton Loan Serv., L.P. v. Manning*, 366 S.W.3d 837, 840 (Tex. App.—Dallas 2012, pet. denied). According to Seller, the Termination Agreement does not meet these requirements because it does not constitute a promise that a definite commission will be paid or name the broker to be paid. We find this argument unpersuasive.

Seller's argument that there is no promise for a definite commission is premised on his interpretation of the relationship between paragraphs D(2) and D(3). Specifically, Seller maintains that because of the Relisting Language in paragraph D(3) (stating "[i]f owner decides to sell property we will relist the property on or before 12/31/2012"), the commission is only payable if Ebby Halliday relists the property and he agrees to sell or lease the property.

Again, the provisions read:

(2) If Owner agrees to sell or lease the Property on or before ___12/31/2021___, by oral or written agreement or option, Owner will pay Broker at the time the Property is sold or leased a fee equal to (*check all that apply*):
☒ (a) ___3___ % of the sales price if Owner sells the Property.
☐ (b) _____ % of the gross rent over the term of the lease if Owner leases the Property.
☐ (c) _____

(3) The fees specified in Paragraph D(2) are payable only if Owner agrees to sell or lease the Property to: (*Check one box only.*)
☒ (a) anyone.
☐ (b) ___If owner decides to sell property we will relist the property on or before 12/31/2021___

–10–

As reflected in the express, unambiguous terms above, the contract provides that the commission is payable if "Owner agrees to sell or lease the property to: anyone [on or before the specified date]." There is no check next to the box in which the Relisting Language appears. Indeed, the contract specifies that only one box should be checked, which clarifies the parties' intent that the only situation in which commission is to be paid is the one specified by the checked box. Moreover, the Relisting Language is not contingent upon the language in 3(a); instead, it is a separate part of the agreement. Accordingly, Seller's argument that the Termination Agreement simply provides an opportunity for Ebby Halliday to relist the property if he decides to put it back on the market on or before 12/31/21 and obtain a commission on the sale of the property if such relisting occurs is misplaced.

Seller relies on *Litton*, 366 S.W.3d at 841 to argue that the Termination Agreement only concerns a future opportunity or agreement to agree and does not specify the broker. In that case, the parties relied on five documents including e-mails, a real estate contract, and a letter on letterhead that contained various information concerning a real estate transaction. But none of the documents contained a promise to pay a commission/termination fee or identified the broker to be paid. In the present case, however, the Termination Agreement unambiguously includes a promise to pay a commission and identifies Dave Perry Miller Real Estate as the broker to be paid. This is sufficient to satisfy the statute of frauds. *See* TEX.

OCC. CODE ANN. § 1101.806(c). Thus, to the extent the trial court granted Seller's summary judgment motion based on the statute of frauds, it was in error.[4]

## D. Condition Precedent

Seller also argues that the Relisting Language is "an additional condition" that must be satisfied before Ebby Halliday is entitled to receive a commission. We disagree.

"A condition precedent is an event that must happen or be performed before a right can accrue to enforce an obligation." *Solar Applications Eng'g, Inc. v. T.A. Oper. Corp.*, 327 S.W.3d 104, 108 (Tex. 2010) (quoting *Centex Corp. v. Dalton,* 840 S.W.2d 952, 956 (Tex. 1992)). "A covenant, as distinguished from a condition precedent, is an agreement to act or refrain from acting in a certain way." *Id.* Although breach of a covenant may give rise to a cause of action for damages, it "does not affect the enforceability of the remaining provisions of the contract unless the breach is a material or total breach." *Id.* "In order to determine whether a condition precedent exists, the intention of the parties must be ascertained; and that can be done only by looking at the entire contract." *Solar Applications*, 327 S.W.3d at 109 (quoting *Criswell v. European Crossroads Shopping Ctr.*, 792 S.W.3d 945, 948 (Tex. 1990)).

---

[4] Seller also argues for the first time on appeal that Ebby Halliday only argued traditional contract elements in the court below and did not argue it met the Occupations Code elements. We do not consider this argument. *See Garza v. Harrison*, 574 S.W.3d 389, 405 (Tex. 2019) (argument raised for the first time on appeal waived). Moreover, the record reflects that Ebby Halliday did raise this argument below.

–12–

Language such as "if," "provided that," "on condition that," or some other conditional phrase is usually used to create a condition precedent to performance. *Solar Applications*, 327 S.W.3d at 108; *Hohenberg Bros. v. George E. Gibbons & Co.*, 537 S.W.2d 1, 3 (Tex. 1976). The absence of such language indicates the parties intended to make a promise rather than impose a condition. *Solar Applications*, 327 S.W.3d at 109; *Criswell*, 327 S.W.2d at 948. If the parties' intent is not clear from the language of the contract and another reasonable interpretation is possible, the agreement will be interpreted as creating a covenant rather than a condition to prevent forfeiture. *Criswell*, 792 S.W.2d at 948.

Seller insists that the use of the term "if" in the Relisting Language evidences a condition. We agree, but the condition does not pertain to the payment of a commission. The Relisting Language provides that "If owner decides to sell, [Ebby Halliday] will relist the property." The conditional language in that section is "if owner decides to sell." This conditional language, however, is not tied or connected to the preceding part of the agreement describing Ebby Halliday's right to receive a commission. The conditional language in the "Termination Fees" section only conditions right to receive a commission on Seller agreeing to sell the property to anyone on or before the specified date.

The authority Seller relies on to argue that the use of the word "if" signifies a condition precedent to the right to receive a commission is distinguishable from the instant case. *See Shin-Con Dev't Corp. v. I.P. Invs. Ltd.*, 270 S.W.3d 759, 766–77

–13–

(Tex. App.—Dallas 2008, no pet.) (condition precedent where agreement provided for forfeiture of payments if party failed to attain title and execute easement agreement); *Don Drum Real Estate Co. v. Hudson*, 465 S.W.2d 409, 411 (Tex. App.—Dallas 1971, no writ) (contract not binding unless loan obtained); *Mayberry v. Julian*, 479 S.W.2d 770, 772, 774 (Tex. App.—Dallas 1972, writ ref'd n.r.e.) (condition precedent when contract subject to obtaining a satisfactory zoning change). Unlike this case, the "if" or required preceding action in the cited cases directly concerned the condition precedent. Here, the word "if" in the Relisting Language concerns an entirely different subject than the commission.

Finally, Seller argues that the Relisting Language must be a condition and cannot be a covenant because the Relisting Language would have no function if "the commission would still be owed without the relisting." This argument misapprehends the purpose of the Termination Agreement as evidenced by the express terms of the agreement.

The Listing Agreement provided for a 6% commission and was to be in effect through September 2, 2021. When Seller wanted to end the agreement early, the listing and the parties' rights and obligations under the Listing Agreement were terminated in the Termination Agreement. As evidenced by the Termination Agreement's express reference to "termination fees," as consideration for early termination of the listing the Termination Agreement provided for broker's compensation by payment of a 3% commission if the Seller agreed to sell the

–14–

property to anyone before December 31, 2021. Thus, the express terms of the contract make clear why a commission is owed regardless of whether the property is relisted. The Relisting Language that Seller erroneously attempts to bootstrap to this section is a separate covenant, not a condition.

To read the contract as Seller suggests would impose a condition for payment of a commission that does not exist. *See e.g.*, *Calloway v. Overholt*, 796 S.W.2d 828, 833–34 (Tex. App.—Austin 1990, writ denied) (no condition); *Frady v. May*, 23 S.W.3d 558, 560 (Tex. App.—Fort Worth 2000, pet. denied) (same). It would also result in no consideration to Ebby Halliday for the early termination of the listing. Seller's proposed construction is not reasonable. *See Markel Ins. Co. v. Muzyka*, 293 S.W.3d 380, 387 (Tex. App.—Fort Worth 2004, no pet.) (courts do not construe contracts to produce an absurd result when a reasonable alternative construction exists).

Based on the unambiguous, plain language of the Termination Agreement, we conclude that the Relisting Language does not make Ebby Halliday's relisting of Seller's property "an additional condition" to Ebby Halliday receiving the commission. To the extent the trial court's summary judgment determination was based on Seller's condition precedent argument it was erroneous.

E.    **Contract Interpretation**

Seller advances several additional contract interpretation arguments in support of summary judgment. Specifically, Seller argues that the listing agreement

with Compass controls and Compass, as the procuring cause of the sale, is the party entitled to a commission. He further argues that the specific terms of the Termination Agreement control over the general and that the contract is ambiguous.

We begin with ambiguity.[5] Seller argues that the contract is ambiguous about: (i) displacement of the procuring cause doctrine, (ii) whether the Relisting Language violates the statute of frauds, and (iii) whether the Relisting Language creates a condition precedent. We have concluded that the express language of the Termination Agreement displaces the procuring cause doctrine, there is no statute of frauds violation, and relisting the property is not a condition precedent to Seller's obligation to pay the termination fee. In so concluding, we find no ambiguity. Seller's obligation to pay Ebby Halliday the 3% commission as a termination fee if he agreed to sell the property on or before the specified date is clear and can be afforded a definite legal meaning. *See Coker v. Coker*, 650 S.W.2d 391, 393 (Tex. 1983). An agreement is not ambiguous merely because the parties offer different interpretations of its language. *Grain Dealers Mut. Ins. Co. v. McKee*, 943 S.W.2d 455, 458 (Tex. 1997). A contract is only ambiguous if its language is susceptible to two or more *reasonable* interpretations. *Kelley-Coppedge, Inc. v. Highlands Ins. Co.*, 980 S.W.2d 462, 465 (Tex. 1998) (emphasis added). There is no ambiguity here.

---

[5] Tacitly acknowledging that ambiguity was not raised in the court below, Seller notes that the court may independently conclude that there is an ambiguity. *See Rosetta Res. Operating, LP v. Martin*, 645 S.W.3d 212, 219 (Tex. 2022).

Seller's argument concerning the Compass listing agreement also fails. Whether the Compass listing agreement was in force at the time of the sale and whether Compass was the procuring cause of the sale is of no consequence to Seller's obligations to Ebby Halliday under the Termination Agreement.

The Termination Agreement and the Compass listing agreement are not, as Seller suggests, competing listing agreements. A listing agreement is a contract between a seller and broker in which the seller lists his property with a broker to negotiate a sale with potential buyers. *Callaway*, 796 S.W.2d at 832, n.2. The Termination Agreement does not meet this criterion. Indeed, it terminated the listing relationship and then included language contemplating a new listing agreement in the future. In consideration for Ebby Halliday's early termination of the listing, Seller agreed to pay the 3% commission if he agreed to sell the property on or before the specified date. His subsequent contract with Compass does not relieve him of this separate contractual obligation to Ebby Halliday.

Finally, Seller argues that "specific and exact terms are given greater weight than general language." *Worldwide Asset Purchasing, LLC v. Rent-A-Center East, Inc.*, 290 S.W.3d 554, 560 (Tex. App.—Dallas 2009, no pet.). Applying this general principle to the Termination Agreement, Seller argues that the listing was to terminate on February 4, 2021, but the Relisting Language provides for payment of a termination fee if the property is sold on or before December 31, 2021. Thus, according to Seller, the Termination Agreement "does not provide for the specific

ability for [Ebby Halliday] to obtain a commission from the sale of the property after the listing termination date of 2/4/2021," but instead "generally describes the future ability of [Ebby Halliday] to relist the property."

This argument conflates two separate sections of the contract that have separate and distinct meanings. Seller's cited authority, however, pertains to contracts with two provisions on the same topic. *See Friedlander v. Christianson*, 320 S.W.2d 404, 408 (Tex. App.—Houston 1959, no writ) (two provisions concerning termination date); *Silver Spur Add'n Homeowners v. Clarksville Seniors Apts.*, 848 S.W. 2d 772, 775 (Tex. App.—Texarkana 1993, writ denied) (general and specific provisions regarding restrictive covenants). In contrast, the two separate sections of the Termination Agreement pertain to entirely different topics. The first, falling under the distinct header "Termination Date" is the effective date of the listing termination. The second, appearing in a separate section with the header "Termination Fees" describes when and how Seller is obligated to pay the termination fee. There is no conflict here.

To the extent the trial court's summary judgment determination was based on any of these additional contract interpretation arguments, it was in error.

## F.    Breach of Contract and Attorney's Fees

We have concluded that the Termination Agreement required Seller to pay Ebby Halliday a 3% commission as a termination fee if the Seller agreed to sell the property to anyone on or before the specified date. It is undisputed that the Seller

agreed to sell the property during the applicable time period and the $167,250.00 commission was not paid to Ebby Halliday. Thus, the summary judgment evidence establishes that Seller breached the contract. *See Gaspar*, 372 S.W.3d at 757.

A plaintiff may recover attorney's fees for breach of a written contract. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 38.001(8); *see also Woodhaven Partners, Ltd. v. Shamoun & Norman*, 422 S.W.3d 821, 837–38 (Tex. App.—Dallas 2014, no pet.). Because Ebby Halliday is entitled to summary judgment on its breach of contract claim, it is also entitled to attorney's fees. Accordingly, we remand to the trial court for determination of those fees. *See Int'l Sec. Life Ins. Co. v. Spray*, 468 S.W.2d 347, 349 (Tex. 1971) (attorney's fees determined by trial court).

### III.  Conclusion

We reverse the trial court's judgment granting Seller's motion for summary judgment and dismissing Ebby Halliday's claims, render judgment granting Ebby Halliday summary judgment on its breach of contract claim and awarding it actual damages in the amount of $167,250.00, and remand to the trial court for a determination of Ebby Halliday's attorney's fees.

/Dennise Garcia/
DENNISE GARCIA
JUSTICE

220386F.P05

–19–



## Court of Appeals
## Fifth District of Texas at Dallas

## JUDGMENT

EBBY HALLIDAY REAL ESTATE, INC. D/B/A EBBY HALLIDAY REALTORS, DAVE PERRY MILLER REAL ESTATE, WILLIAMS TREW REAL ESTATE, Appellant

No. 05-22-00386-CV     V.

MARK GIAMBRONE, Appellee

On Appeal from the 192nd Judicial District Court, Dallas County, Texas Trial Court Cause No. DC-21-17047. Opinion delivered by Justice Garcia. Justices Reichek and Nowell participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is **REVERSED** and judgment is **RENDERED** that:
Summary judgment is granted for Ebby Halliday on its breach of contract claim and Ebby Halliday is awarded $167,250.00 in actual damages.

The case is **REMANDED** to the trial court for a determination of Ebby Halliday's attorney's fees.

It is **ORDERED** that appellant EBBY HALLIDAY REAL ESTATE, INC. D/B/A EBBY HALLIDAY REALTORS, DAVE PERRY MILLER REAL ESTATE, WILLIAMS TREW REAL ESTATE recover its costs of this appeal from appellee MARK GIAMBRONE.

Judgment entered this 28th day of February 2023.