**W. H. ROQUEMORE, Appellant,**

v.

**Clarence C. TALLEY, Appellee.**

No. 17388.

Court of Civil Appeals of Texas, Dallas.

Feb. 13, 1970.

Rehearing Denied March 13, 1970.

**320**

Wm. Andress, Jr., Andress, Woodgate & Hartt, Dallas, for appellant.

Kenneth C. Stephenson, Biggers, Baker, Lloyd & Carver, Dallas, for appellee.

BATEMAN, Justice.

W. H. Roquemore, a real estate broker, sued Clarence C. Talley for $12,000 as compensation for finding and arranging for the purchase by Talley of certain real estate in the City of Dallas spoken of in the record and briefs as "Skiles Place." The trial court, sitting without a jury, rendered a take-nothing judgment.

Talley desired to buy a site for his business. Roquemore talked to him about "Skiles Place," owned by the City of Dallas as a part of its park system, and on October 29, 1965 he wrote a letter to Talley to the effect that this property might be purchased and ending with this paragraph:

"By your signature below you do confirm authorization for me to conduct such negotiations on behalf of you and/or your Corporation for the purchase of said tract subject to (a) the final price being acceptable to you and (b) your ability to adequately finance said purchase."

Talley signed his name in the margin of that letter.

Under date of December 30, 1965 Roquemore wrote Talley another letter explaining that, for reasons immaterial here, it would be unwise to attempt to buy the property directly from the city and that he had located a tract which he thought the city would accept in exchange for "Skiles Place," and that Talley could then purchase "Skiles Place" from the new own-er at an agreed price and on extended terms. In the letter Roquemore proposed that Talley give him a note at closing covering his commissions of $24,000. The tract to be traded under this arrangement was on John West Road. A form of con-tract of sale was enclosed with this letter, also dated December 30, 1965, naming "City of Dallas or its Assignee" as seller of "Skiles Place" to Talley for $220,600 payable $30,600 cash and the balance in monthly installments of $1,603.60 each. Under the heading "SPECIAL CONDITIONS" the form of contract provided:

"(1) This contract is contingent upon the City of Dallas Park Board effecting a trade of land as set forth in W. H. Roquemore letter to Clarence C. Talley dated December 30th, 1965, (2) acceptance of this contract by Assignee or new owner following such trade and (3) at closing, the preparation of a written agreement or note from Talley to Roquemore covering commissions as stipulated in letter of December 30th, 1965."

Talley signed this contract.

However, the city was unwilling to accept the John West Road property because it was unsuitable for park purposes. Several weeks later Roquemore located another tract which was acceptable to the city, but the owner of this tract was unwilling to enter into the transaction unless he could sell "Skiles Place" for cash. The purchase price was reduced $15,600 and Roquemore offered to reduce his commission to $12,000 if Talley would arrange to pay all cash. He testified that Talley told him he could and would do so, but Talley denied this and testified that he was unable to finance the purchase for all cash. This was the only substantial conflict in the testimony and the trier of the facts resolved that conflict in Talley's favor, if not specifically then impliedly as authorized by Rule 299, Vernon's Texas Rules of Civil Procedure.

The trial court found that the contract dated December 30, 1965 was rejected by the City of Dallas and was never signed by the city or its "assignee" as seller; and that Roquemore had never produced a seller ready, able and willing to sell real estate to Talley on terms which he could

adequately finance. The court concluded that after rejection by the city of the contract above described Talley never executed any written agreement upon which an action might be brought by Roquemore for a commission in the light of Vernon's Ann.Civ.St. Article 6573a, Sec. 28, and that Roquemore was therefore not entitled to recover any money from Talley for attempting to negotiate the sale of real estate to Talley.

■ In his first point of error Roquemore contends that Talley's signature on the letter and contract of December 30, 1965 constituted a valid listing complying with the statute (Art. 6573a, Sec. 28, V.A.C.S.) and that Talley is therefore legally liable for the commission, citing Levenson v. Alpert, 399 S.W.2d 955 (Tex.Civ.App., San Antonio 1966, no writ).

In *Levenson* the seller gave the broker a written listing at a definite price, but added: "Terms of payment to be at my approval." The court held that this meant that the broker would have to find a purchaser ready, able and willing to purchase the land for cash, or upon terms approved by the seller. In principle this is substantially the same situation we have here, except that in *Levenson* there was a summary judgment against the broker which was reversed, not because he was entitled to recover a commission, but because the court held there was a fact issue making summary judgment erroneous. The case at bar, however, was tried on its merits and any fact issues which may be said to exist were resolved in Talley's favor. His agreement to pay the commission was conditioned upon Roquemore's producing a seller ready, able and willing to sell the property to Talley on the terms stipulated in the contract. The trial court found on abundant evidence that Roquemore failed to do so. That being true, there was no basis for his recovery of a judgment against Talley, and the first point of error is overruled. Pryor v. Jolly, 91 Tex. 86, 40 S.W. 959 (1897); Warren v. Russell, 206 S.W.

2d 132, 134 (Tex.Civ.App., Austin, 1947, no writ).

By his second point of error Roquemore says there is no evidence to support the court's finding that the city *rejected* the contract of December 30, 1965. This point is overruled. "Rejected" was perhaps not the best word, but the judgment cannot be reversed because of a purely semantic mistake (and we do not hold that this was a mistake). The facts were, as testified by Roquemore himself, that he first located an owner of property on John West Road, who was willing to convey it to the city in exchange for "Skiles Place" and then sell the latter to Talley on deferred payments satisfactory to both of them. The city had this trade under consideration when Roquemore prepared the contract dated December 30, 1965, but decided it was unwilling to accept the property on John West Road, and in that sense "rejected" the contract.

■ In his third point of error Roquemore insists that his production of one who was ready, able and willing to acquire the park property by trade and sell it to Talley entitled him to the commission, even though such proposed seller was unwilling to sell on terms and even though Talley was unable to finance the purchase. While admitting his inability to produce what Talley agreed to pay him to produce, Roquemore insists nevertheless on being paid half the commission agreed upon because, he says, Talley told him he would be able to finance the purchase, after which he did considerable work on the matter, and the court found that $12,000 was a reasonable fee for his services. Not only was there a conflict in the testimony as to what Talley told him, which conflict must be said to have been resolved in Talley's favor, but this is not a suit for damages on account of false representations; it is a suit on a written contract to pay a commission on a certain contingency which never occurred.

We find in this record no legal basis on which a recovery by Roquemore may be had. Accordingly, all of his points of error are overruled and the judgment is affirmed.

Affirmed.