**Roger L. ZELLER, Appellant,**

v.

**Guy CHIPMAN, Jr., d/b/a Guy Chipman Company, Appellee.**

No. 15017.

Court of Civil Appeals of Texas, San Antonio.

Nov. 17, 1971.

Rehearing Denied Dec. 29, 1971.

Luther Rutherford, San Antonio, for appellant.

James L. Drought, Thomas Drought, San Antonio, for appellee.

BARROW, Chief Justice.

Appellee, Guy Chipman, Jr., d/b/a Guy Chipman Company, a licensed real estate broker, brought this suit to recover a real estate commission from Roger L. Zeller. The jury found: (1) that the efforts of the Chipman Company were the efficient and procuring cause of the sale of Zeller's house; and (2) that the Chipman Company had not abandoned and terminated its efforts, and the sale thereafter consummated through independent negotiations of another broker. Judgment was accordingly entered on the jury verdict whereby Chipman Company recovered the sum of $892.50, together with a stipulated reasonable attorney's fee of $300.00.

Zeller has timely perfected this appeal and asserts seven assignments of error. Under his first five points, Zeller complains of the definition of "procuring cause of the sale" as given by the trial court. Under his sixth and seventh points, Zeller asserts that the trial court erred in de-

nying his motion for judgment non obstante veredicto because there is no evidence or insufficient evidence to support the jury's finding on his defensive theory of abandonment.

Since the final two points would require a rendition of a take-nothing judgment, these points should be considered at the outset. Both are based on the premise that the trial court erroneously overruled Zeller's motion for judgment non obstante veredicto; therefore, both present a "no evidence" or law question. Chemical Cleaning, Inc. v. Chemical Cleaning & Equipment Service, Inc., 462 S.W.2d 276 (Tex. 1970); Calvert: "No Evidence" and "Insufficient Evidence" Points of Error, 38 Tex.L.Rev. 361 (1960). In determining this law question, we must consider only the evidence and the inferences tending to support the finding and disregard all evidence and inferences to the contrary. Garza v. Alviar, 395 S.W.2d 821 (Tex. 1965).

■ In August, 1969, Zeller granted J. W. Coker, d/b/a John Dick Company, an exclusive listing on his property at 519 Cave Lane, San Antonio. Prior thereto, Chipman Company had a listing to sell a residence at 339 Linda Drive, San Antonio, owned by L. J. Redwine and wife, LaVerne. On August 13, 1969, an Earnest Money Contract was entered into between the Redwines and James Craig, whereby Craig agreed to purchase the Linda property. During the course of the negotiations on the Linda property, Mrs. Redwine advised Mrs. Clara Belle Cather, Chipman Company's northside office manager, that the Redwines were interested in purchasing a home in Northwood, and were particularly interested in the Cave Lane residence. Mrs. Cather was familiar with the property, since Chipman Company once had a listing on it, and in fact, she still had a key. She called Coker and secured his permission to show the house to her prospect. Mrs. Cather showed the house to Mrs. Redwine, who agreed to purchase it. Mrs. Cather prepared an Earnest Money Contract showing the sales price as $28,750.00, payable $4,750.00 in cash and assumption by buyers of Zeller's note which had a balance owed of $24,000.00. Mrs. Cather arranged with Coker for them to present the Earnest Money Contract to Zeller at the latter's office the following morning. At this meeting, Coker learned for the first time that the buyers were the Redwines. He complained at first that the Redwines were his clients in that Mrs. Redwine had talked to him on the telephone about the house a few weeks previously. However, Coker agreed to divide the commission on this sale, and the Earnest Money Contract was presented to Zeller with a provision that the real estate commission be divided equally between Chipman Company and John Dick Company. Zeller signed the Earnest Money Contract after changing the sales price to his original price of $29,750.00. Mrs. Redwine subsequently agreed to this change in price.

This Earnest Money Contract was contingent upon the closing of the sale of the Redwines' Linda property and the closing of the Cave Lane deal prior to August 31, 1969. Unfortunately, Craig subsequently backed out of his contract to purchase the Linda property and forfeited his earnest money. In the meantime, the Redwines commenced dealing directly with Coker. Arrangements were made by Coker for the Redwines to move into the Cave Lane property on a temporary rental basis until they could arrange for the down payment. On September 24, 1969, another Earnest Money Contract was entered into between the Redwines and Zeller, whereby the Redwines agreed to purchase the property for $29,750.00, payable $2,750.00 down, assumption of the $24,000.00 note and the balance to be evidenced by a 90-day note to Zeller. This contract provided that John Dick Company was to receive all the commission. The purpose of this Earnest Money Contract is not clear in that the entire deal was closed on the same date. Chipman Company was not a party to the second Earnest Money Contract, but made demand

for half of the commission when Chipman learned of the closing of the deal.

Zeller urges by his sixth and seventh points that the undisputed evidence establishes that Chipman Company had abandoned its efforts to close the Redwine sale, and that it was subsequently closed through the independent efforts of Coker. The basis for this contention is the testimony of Coker that about two weeks after the Earnest Money Contract of August 19, 1969, had been executed, Chipman telephoned and advised that they had been unable to sell the Linda property and that his company was through with the Redwines. Zeller urges that since Chipman did not take the stand subsequently and deny Coker's testimony, Chipman is bound by this testimony. Such contention overlooks the prior testimony of Chipman to the contrary, wherein he testified that he had several conversations with Coker after August 19, 1969, relative to the closing and thought Coker and Chipman were working together in an effort to close the sale to the Redwines. Letters were introduced which showed that as late as September 20, 1969, Chipman was still working with the Redwines in an effort to close the sale with Craig. We cannot say that the record establishes as a matter of law that Chipman Company had abandoned their efforts to induce the Redwines to purchase the property. Accordingly, the sixth and seventh points are overruled.

■ Zeller's first five assignments of error complain of the trial court's definition of "procuring cause of the sale" [1] and particularly the court's instruction that "it is *immaterial* that the transaction is finally consumated [sic] by another broker." (Emphasis ours.) Zeller urges that such instruction was a comment on the weight of the evidence in that the trial court thereby instructed the jury not to consider the evidence which showed that the Redwine-Zeller sale had actually been consummated by Coker. This objection is valid and the trial court erred in overruling Zeller's timely objection to this instruction.

The applicable rule of law was stated by this Court in Cass v. Hurst, 329 S.W.2d 450, 451–452 (1959, no writ), wherein it was said: "It is the settled law of this State that where a broker secures a purchaser during the existence of his exclusive agency, he is entitled to his commission, provided the purchaser is procured by his efforts while his contract is still in force, although the sale is actually made by the owner upon terms satisfactory to himself, though different from those provided in the contract with the broker. Goodwin v. Gunter, 109 Tex. 56, 185 S.W. 295, 195 S.W. 848; Air Conditioning, Inc. v. Harrison-Wilson-Pearson, 151 Tex. 635, 253 S.W.2d 422. On the other hand, if the broker has been unsuccessful in his efforts to induce the buyer to purchase the property, without fault on the part of the owner, and has ceased his efforts to induce the buyer to purchase the property, then the sale is made by the owner as the result of independent negotiations directly between the owner and the buyer, or through the medi-

---

1. "In connection with the foregoing Special Issue you are instructed that by the term 'procuring cause of the sale' is meant such act or acts, if any, in bringing the buyers and sellers together in connection with the sale of the property in question which so far contributed to bringing about the sale that but for such act or acts, if any, the sale would not have been consumated [sic].

"You are further instructed that in order for a real estate broker to be a 'procuring cause of the sale' it is not necessary for the transaction to have been consumated [sic] upon the terms in the original earnest money contract or upon the terms originally discussed between the parties, nor is it necessary for the broker to have been present or even participate in the final consumation [sic] of the sale or the negotiations leading up to the final consumation [sic] of the sale, and it is immaterial that the transaction is finally consumated [sic] by another broker. Further, it is not necessary that the seller have knowledge at the time that the purchaser had been procured, if he was, by a broker in order for said broker to be a 'procuring cause of the sale.'"

um of some other broker, and the original broker is not entitled to a commission on such sale."

Here the parties agreed that Chipman Company had brought the Redwines and Zeller together and procured the first Earnest Money Contract. However, it was the contention of Zeller that the deal of August 19, 1969, fell through, and thereafter Chipman Company abandoned and terminated their efforts to close a deal between these parties before the sale was successfully consummated through the independent efforts of Coker. We have heretofore pointed out that a disputed fact issue was raised to be resolved by the jury. However, the jury should not have been instructed that it was "immaterial" that the deal was finally consummated by another broker. Clearly this was one of the vital facts that the jury was entitled to consider in determining if Chipman Company was the procuring cause of the sale. Prejudicial error was committed by the trial court's instruction that such evidence was immaterial.

Zeller does not make any other specific complaint against the trial court's definition of "procuring cause of the sale," although he does assert that the trial court erred in refusing to give the following requested instruction: " . . . by the term 'procuring cause' as herein used is meant that cause which in a natural and continued sequence, unbroken by any new independent intervening cause, produces the event, without which it would not have occurred." This definition was specifically approved in Settegast v. Timmins, 6 S.W. 2d 425 (Tex.Civ.App.—Beaumont 1928, writ ref'd). See also: First Trust Joint Stock Land Bank of Chicago v. Morrison, 92 S.W.2d 503 (Tex.Civ.App.—Fort Worth 1936, no writ). While this definition is obviously much shorter than the instruction given herein, the trial court's definition was easier for the jury to understand in that such instruction contained all the law applicable to this case. We doubt that

Zeller could be heard to complain in any respect of this instruction, other than the comment on the weight of the evidence.

The judgment of the trial court is reversed and the cause remanded.

CADENA and KLINGEMAN, JJ., concur.