J. B. McPHERSON, Appellant,

v.

Don OSBORN et al., Appellees.

No. 8202.

Court of Civil Appeals of Texas, Amarillo.

Dec. 13, 1971.

Evans, Pharr, Trout & Jones, John A. Flygare, Lubbock, for appellant.

Quinn Brackett, Lubbock, for appellees.

REYNOLDS, Justice.

The defendant property owner has appealed from a summary judgment rendered against him in favor of the plaintiff broker for a real estate commission and attorney fees for negotiating a real estate sale that was not consummated. The appeal is predicated on four assigned points of error in which it is alleged that summary judgment is precluded because fact issues were raised and the commission never became due. We do not find the as- signments to be tenable, and the summary judgment is affirmed.

A statement, as revealed by the record, is necessary. J. B. McPherson, a married man and a licensed realtor with 25 years experience in real estate, signed a real estate listing agreement with Osborn-Meeks & Company, a firm of licensed real estate brokers, giving that firm the exclusive right for six months to sell an improved commercial lot in the City of Lubbock. The agreement provided for a sale price, the rate of the commission thereon in the event of a sale, and stated that McPherson had the legal right to, and would, execute a sufficient instrument of conveyance. On March 26, 1970, during the term of the exclusive listing, the broker procured the execution of a contract for the sale and purchase of the property by McPherson, as seller, and James A. Walters, Trustee, as purchaser, to be consummated on or before April 15, 1970, at a lesser price and commission than provided in the listing agreement. The contract, in which the broker joined, was prepared on a printed standard sale contract form with typewritten insertions, among which were:

"J. B. McPHERSON, individually, not joined herein by his wife for the reason that the property referred to herein is not now used as his homestead and constitutes no portion thereof,

" * * * * * *

"(b) Purchaser shall expressly take the above property, subject to the deed of trust and lien outstanding in favor of Security Life and Accident Company of Denver, Colorado, only; which deed of trust lien shall have an unpaid balance at closing after the same is brought current to date of closing of not more than $64,000.00;

"(c) Seller shall make the present loan current to date of closing and cure any present default, if any, on or before closing;

"(d) It is understood and agreed that this contract is made subject to the above referenced lien outstanding in favor of Security Life and Accident Company not being accelerated at time of closing.

"  *    *    *    *    *    *

"In the event of breach of this agreement, the nonbreaching party shall retain all remedies permitted by law including the right to require the breaching party to specifically perform this contract.

"  *    *    *    *    *    *

"Seller agrees to pay the undersigned
$4,000.00 [1]
agent a 6% real estate commission at closing."

After the execution of the contract and prior to the date specified for closing, Walters avers he had a conversation with Mr. and Mrs. McPherson in which he was advised that Mrs. McPherson was claiming the property to be her business homestead and, as a consequence, Walters stated he would require her to sign the deed of conveyance. McPherson denied the property was a business homestead and testified Mrs. McPherson would not sign the deed because Walters made her mad. The record reveals that the indebtedness evidenced by the note and secured by the deed of trust referred to in the contract was in default, the payment was accelerated and foreclosure notice posted.[2]

The transaction was not consummated and the broker filed suit for the $4,000.00 commission and reasonable attorney fees. Thereafter, plaintiff moved for summary judgment, supporting the motion with affidavits and the deposition of McPherson. Walters' affidavit shows that he was ready, willing, able and present to complete the transaction, but McPherson did not appear to close the sale. The record does not show that McPherson ever offered to complete the transaction. In his deposition McPherson states that the transaction was not closed because payment of the note was accelerated and because his wife would not sign the deed. Summary judgment was for the $4,000.00 commission and attorney fees of $750.00, stipulated to be the reasonable amount if plaintiff is entitled to prevail.

It is this set of circumstances which McPherson contends raised fact issues and, in any event, demonstrates that the commission never became payable. The fact issues are alleged to be whether the property in fact was Mrs. McPherson's business homestead, necessitating her signature on the deed, the absence of which was why the transaction was not closed; whether the wording "at closing" meant the parties intended the commission was to be paid only if the transaction was closed, or designated the time of payment if the commission was earned at the time the contract was executed; whether the acceleration of payment of the note was the condition that prevented the closing of the sale; and whether a commission is due on a conditional contract where the condition is not satisfied. It is claimed that the commission never became payable because it was to be paid "at closing" and it is undisputed that the contract never was closed, and, furthermore, the contract was conditional on the loan not being accelerated and since it was, the contract could not be specifically enforced.

■■■ Disregarding for the moment the meaning of the phrase "at closing," it might be that fact issues would be raised if this were a controversy between the contractual seller and purchaser for enforcement of or liability under the contract. But it is not necessary that we determine that aspect, for that is not the situation confronting us. This is a suit by a broker who procured a ready, willing and able

---

1. This change was made in ink and initialed by McPherson, Walters and Don Osborn.

2. The loan subsequently was "paid * * * up" by McPherson, who "had to go all the way to the top to get it reinstated."

buyer with whom the owner entered into a contract of sale. McPherson warranted that his title was free from doubt except for the deed of trust lien which was disclosed, to which the sale was subject, and the indebtedness secured thereby was one McPherson promised to bring to a current status at the time of closing. The broker had no notice of any title defect, even if Mrs. McPherson's alleged business homestead claim was one, other than the deed of trust lien. It is undisputed that it was McPherson's failure to put the loan on a current status that accelerated the payment thereof and caused foreclosure notice to be posted prior to the closing date, although subsequently he placed the loan in a current state. Essentially, then, the issues relate only to the owner's title. With respect to the contractual seller and broker, Texas law in this situation is collated in 9 Tex.Jur.2d Brokers § 61 and expressed in these words:

> "Generally, the broker is entitled to a commission if the transaction fails of consummation because of a defect in the seller's title. Unless the broker is chargeable with knowledge of the defect that ultimately defeats the sale, he has a right to assume, and his principal impliedly warrants, that the title is free from infirmity. * * * Where there is a definite and binding contract, the principal may enforce it if his title is good; if it is bad, the failure to consummate the transaction is attributable to his own fault. Therefore, whether his title be good or bad, he is liable for commission. * * *"

Furthermore, the seller may not defeat the broker's right to his commission where the seller renders himself unable to complete the transaction, A.A.A. Realty Company v. Neece, 292 S.W.2d 811 (Tex.Civ.App.— Fort Worth 1956, aff'd 1957, Neece v. A. A.A. Realty Company, 156 Tex. 614, 299 S.W.2d 270), or where the property is homestead and he is unable to secure his wife to join him in the deed. Golden v. Halliday, 339 S.W.2d 715 (Tex.Civ.App.— Dallas 1960, writ dism'd); Clark v. Ray, 25 S.W.2d 656 (Tex.Civ.App.—Dallas 1930, no writ).

■ Under these circumstances the broker is entitled to prevail unless it can be said that the phrase "at closing" made the commission contingent on consummation of the contract. We do not believe the contract admits of such construction, or raises a fact issue with respect thereto, but merely fixes the time of payment of the commission. Were there some doubt of the meaning of the phrase "at closing," it is dispelled by McPherson's deposition testimony, the only evidence other than the contract itself concerning the payment of the commission, as follows:

> "Q. So you agreed to pay him $4,-000.00?
>
> "A. Yeah, when the deal was closed."

McPherson did not say the commission was payable *if* the deal was closed, but said he agreed to pay *when* the deal was closed. And, finally, even if the commission were contracted to be payable only if the sale were consummated, the broker still is entitled to prevail because the failure to complete the sale was not the fault of the broker or Walters, but the fault of McPherson. Peters v. Coleman, 263 S.W. 2d 639 (Tex.Civ.App.—Fort Worth 1953, writ ref'd, n. r. e.).

There being no genuine issue of material fact to be tried and plaintiff being entitled to the summary judgment rendered as a matter of law, McPherson's points of error are overruled.

The summary judgment of the trial court is affirmed.