**Larry FUESS d/b/a Red Carpet Realtors, Appellant,**

v.

**Perry MUELLER, Jr. et ux, Appellee.**

**No. 17842.**

Court of Appeals of Texas, Houston (1st Dist.).

Jan. 7, 1982.

Rehearing Denied March 18, 1982.

Ellis F. Morris, Houston, for appellant.

James E. Brown, Lake Jackson, for appellee.

Before STILLEY, PRICE and WARREN, JJ.

WARREN, Justice.

This is an appeal from a take nothing judgment on a suit to enforce payment of a realtor's commission. Trial was to the court; findings of fact and conclusions of law were filed.

On May 15, 1979, Mrs. White, a real estate saleslady employed by appellant, was in Brazoria County attempting to find a suitable home for Mr. and Mrs. David Newton. While the Newtons and Mrs. White were riding through Lake Jackson, Mrs. White noticed a "for sale" sign in front of a home that she thought might be suitable for the Newtons. She contacted Dr. Mueller, the owner, and as a result, on that day a contract for the sale of the house was executed by the appellees and the Newtons. Appellees refused to enter into a listing agreement with appellant but did agree in the contract to pay appellant a 6% commission when the sale was consummated.

The May 15 contract provided among other things, that the entire purchase price of $43,900 would be funded by a Veterans Administration (VA) loan and that the contract was made subject to approval of a VA loan in this amount. However, it also provided that should the loan not be approved in an amount as great as the purchase price, buyer would have the option of purchasing the house by paying, in cash, the difference between the amount of the loan and the purchase price. The VA agreed to loan only $36,000 on the property. The Newtons informed appellees and Mrs. White that they could not afford to purchase the property since the loan commitment was so small. On July 17, appellees and the Newtons entered into a second contract for a sale similar to the first, the only changes being: (1) a reduction was made of the purchase price from $43,900 to $39,000; (2) the Newtons were to make a $3000 cash down payment; (3) the paragraph providing for the payment of a broker's fee was eliminated, and (4) no closing date was stipulated.

In September, the sale was consummated on the terms agreed upon in the second contract.

The court made the following findings of fact and conclusions of law which appellant contends are supported by no evidence and, alternatively, are supported by insufficient evidence.

## FINDINGS OF FACT

3. The Contract contained in Exhibit "A" was contingent upon Buyers, David Earl Newton and Sandra Ruth Newton obtaining approval of a Veteran's Administration Loan of not less than $43,900 by July 1, 1979.

4. The Contract provided for extension of closing for a maximum period of fifteen (15) days, for accruing (curing) title objections and for meeting loan requirements.

5. No objections to title were made, and no request was made to extend closing beyond July 1, 1979, to comply with any loan requirements. Buyers, David Earl Newton and Sandra Ruth Newton failed to obtain a Veteran's Administration Loan approval before July 1, 1979.

6. Buyers, David Earl Newton and Sandra Ruth Newton notified Sellers, Perry Mueller, Jr., and Patsy Mueller, and Plaintiff, Larry Fuess d/b/a Red Carpet Realtors, through his sales agent that Buyers were unable to obtain Veteran's

Administration Loan approval and therefore could not carry out the contract.

7. The Plaintiff, Larry Fuess d/b/a Red Carpet Realtors, through his Sale's Agent, Nell White, abandoned his efforts to bring about closing the first contract, and made no attempt to extend the closing date beyond July 1, 1979. The contract dated May 15, 1979, terminated on July 1, 1979.

11. At a subsequent date, the property was transferred and the real estate transaction was closed based upon the contract dated July 17, 1979, with no provisions for a real estate commission for Plaintiff, Larry Fuess, d/b/a Red Carpet Realtors.

## CONCLUSIONS OF LAW

1. Defendants, Perry Mueller, Jr., and Patsy Mueller are not liable for a real estate commission to Plaintiff, Larry Fuess d/b/a Red Carpet Realtors on the sale of the subject property.

2. The Contract dated May 15, 1979, was terminated by Buyers, David Earl Newton and Sandra Ruth Newton, due to their failure to obtain Veteran's Administration Loan approval by the closing date.

3. Sellers, Perry Mueller, Jr., and Patsy Mueller, were not responsible in any way for the failure of the contract dated May 15, 1979.

4. Sellers, Perry Mueller, Jr., and Patsy Mueller, and Buyers, David Earl Newton and Sandra Ruth Newton, did not mutually rescind the contract dated May 15, 1979.

We are of the opinion that the facts do not support the conclusion that appellees are not liable to appellant for a real estate commission.

Although the first contract was contingent on the Newtons obtaining loan approval for $43,900 by July 1, 1979, (F.F. No. 3), the contract made provisions for options which could be exercised by the buyer or seller. These options allowed buyer to purchase the property even though the loan was not approved for the stipulated amount. Likewise, an option contained in the contract provided that the sale could be consummated at the lower price. So the failure of the VA to approve the loan for the amount of the note did not automatically terminate the contract; it made the contract terminable at the option of the buyer. The parties to the sale agreed to reduce the price of the house to $39,000, to require buyer to make a down payment of $3000, and to use the VA loan of $36,000 to finance the remainder of the purchase price.

A broker's right to a commission is not affected by the fact that the property is ultimately sold for a greater or lesser price. *Morris v. Jordan Financial Corp.*, 564 S.W.2d 180 (Tex.Civ.App.-Tyler 1978, writ ref'd n. r. e.). Nor can a broker be deprived of his commission by an agreement of cancellation or release made by vendor or purchaser unless made with the broker's consent. *Stitt v. Royal Park Fashions, Inc.*, 546 S.W.2d 924 (Tex.Civ.App.-Dallas 1977, writ ref'd n. r. e.). A broker is entitled to a commission according to the contract if, while his employment is in force, he procures a purchaser to whom the owner directly makes a sale upon terms which are satisfactory to himself, though different from those limited to the broker. *Frost v. Texas Gulf Sulphur Co.*, 17 S.W.2d 121 (Tex.Civ.App.-Beaumont 1929, writ ref'd).

There are three methods by which a real estate broker may earn a commission: (1) by procuring from a purchaser a valid enforceable contract on the terms proposed by the vendor; (2) by producing a purchaser to whom a sale or exchange is in fact made on terms satisfactory to the vendor; (3) by producing a purchaser who is ready, able, and willing to buy or exchange on terms specified in the contract of employment, and who offers to do so. *Anderson—Berney Bldg. Co. v. Swan*, 133 S.W.2d 269 (Tex.Civ.App.-Fort Worth 1939, writ dism'd judgmt. cor.)

It is undisputed that appellant produced a purchaser to whom a sale was made on terms satisfactory to appellees. Therefore, appellant is entitled to a commission unless there are legal or equitable grounds that entitle appellees to avoidance.

■ Appellees contend that no commission is due because the first contract lapsed by its terms on July 1, through no fault of their own, and thereafter appellant's agent abandoned her effort to consummate the sale. We disagree. The second contract was merely a modification of the first. Under the terms of the first contract, the parties were expressly given the right to change the purchase price, require a down payment, and extend the closing date. These were the identical modifications incorporated into the second contract. The agent for appellant had no authority to extend the term of the contract. After being told that the sale could not be consummated she had no further legal duty to attempt to revive it. By furnishing appellees a buyer who ultimately purchased the property on terms acceptable to appellee, appellant earned a real estate commission.

The judgment is reversed and judgment rendered in favor of appellant against appellees for $2340, an amount equal to 6% of the selling price of the property.