**TOWER VIEW, INC., Appellant,**

v.

**Sam B. HOPKINS, Appellee.**

**No. 04–83–00078–CV.**

Court of Appeals of Texas, San Antonio.

Sept. 12, 1984.

Rehearing Denied Oct. 22, 1984.

**634**

Dennis K. Drake, San Antonio, for appellant.

Ken Sharber, San Antonio, for appellee.

Before ESQUIVEL, BUTTS and DIAL, JJ.

## OPINION

ESQUIVEL, Justice.

This is an appeal from a judgment rendered in favor of appellee in a jury trial wherein appellant was attempting to recover a real estate broker's fee. Appellant presents six points of error. We affirm.

On September 1, 1977, appellant, Tower View, Inc. (Tower View), a real estate brokerage firm, entered into a "Non-Exclusive Commercial Listing Agreement" with appellee, Sam B. Hopkins (Hopkins), to sell, inter alia, a property of Hopkins' known as the Eden Roc Apartments. Soon after the agreement was entered into, Tower View's principal broker, John Chiovitti (Chiovitti), located a prospective buyer for the apartment complexes, Joseph E. Gilmore (Gilmore). Chiovitti and Gilmore negotiated between themselves whereupon Gilmore authorized Chiovitti to submit an offer to Hopkins for the purchase of the Fountainebleau Apartments. Hopkins rejected this offer. Gilmore and Chiovitti then discussed the Eden Roc complex. Gilmore did not submit a written earnest money contract on this complex. Rather, he told Chiovitti that if the complex metering system was changed so that each apartment was separately metered, and that if rents in the complex stabilized by the beginning of November, he would buy the Eden Roc at full price.

Tower View did not submit Gilmore's oral offer to Hopkins until another earnest money contract, submitted by Craig Carlson, looked like it would not close. Carlson's offer was for less than full price. Chiovitti testified that sometime during the course of the Carlson contract, he told Hopkins that Gilmore was still interested. He further testified that he tried to get in touch with Gilmore during the latter part of November and the early part of December. Gilmore testified that he did not know when, if ever, his offer to purchase the Eden Roc complex was submitted to Hopkins by Chiovitti.

During the pendency of Carlson's offer, Penelope Priakos (Priakos), a broker who had recently left Tower View and begun her own brokerage firm, and who was familiar with the particulars of Carlson's contract, was contacted by Gilmore and, unbeknownst to Chiovitti, submitted a back up contract for Gilmore to Hopkins.

Gilmore's back up contract was accepted by Hopkins during the pendency of the Carlson contract. The uncontradicted testimony of both Gilmore and Priakos reveals that essentially all Priakos did was physically fill in the blanks in the back up contract since Gilmore had already decided to purchase based on his discussions with Chiovitti. When the Carlson contract failed to close, Hopkins instructed Chiovitti to cease all efforts to sell the property since Hopkins had another buyer lined up whose identity Hopkins refused to reveal.

Some time thereafter, Tower View learned of the sale to Gilmore and made a demand on Hopkins for the broker's commission. This suit resulted from Hopkins' refusal to pay same.

In point of error one, the appellant argues that the trial court erred in granting judgment for the appellee once the jury found that the seller sold the property to the same buyer with whom Tower View had negotiated during the term of its listing agreement. In support of its contention, Tower View refers this court to the "professional service fee" portion of its "Non-Exclusive Commercial Listing Agree-

ment" with Hopkins. This section provided:

PROFESSIONAL SERVICE FEE: Owner agrees to pay Broker a fee of 6% of Gross Sales Price, if:

(1) Broker procures a purchaser during the term of this agreement at the above price, or any other price or terms agreeable to owner;

(2) The property is sold, transferred, leased, rented, or exchanged by any person, within 180 days after the expiration of this agreement, to any person, firm or corporation, with whom Broker has negotiated for the purchase of this property, during the period hereof, and if Broker

Supplies [sic] owner with a list of such parties within a reasonable time after the expiration of this agreement.

Tower View argues that the provisions in number two, i.e., that the property "is sold ... by any person within 180 days after the expiration of this agreement to any person ... with whom Broker has negotiated for the purchase of this property, during the period hereof, and if Broker supplies owner with the list of such parties within a reasonable time after the expiration of this agreement," covers the fact situation with which this court must deal. We disagree.

■ It is a basic rule of contract law that when a court is called upon to interpret a contract, the court will give plain meaning to the words used in the writing. *City of Pinehurst v. Spooner Addition Water Co.*, 432 S.W.2d 515, 518 (Tex.1968), and authorities cited therein. It is the *objective* intent, not the subjective intent, of the parties that controls the meaning to be given the words in the contract. *Id.* at 518. Even a cursory reading of the fee provisions herein reveals that the second instance in which Tower View would be entitled to a broker's commission would be when the property was sold, by any person, *within 180 days after the expiration of the agreement*, to any person with whom the broker negotiated within a reasonable time after the expiration of the agreement. We do not read the provision to provide for

a commission if the broker merely "negotiated" with the eventual buyer at some time prior to the expiration of the listing. By its own terms, the second provision is not operative unless the property is sold within 180 days after the expiration of the agreement to someone with whom the broker had negotiated during the period of the listing.

■ The case relied upon by appellant, *Kaye v. Coughlin*, 443 S.W.2d 612 (Tex. Civ.App.—Eastland 1969, no writ), is in fact fatal to its argument. In *Kaye*, the jury found, as here, that the broker had negotiated with the buyer during the period of the listing. In that case, however, the sale took place within that contract's 90 day protective provision, and not, as in our case, during the period of the listing itself. A further distinction is that in *Kaye*, the broker had a 30 day exclusive right to sell the property and was entitled to a commission for any sale, whether the broker was the procuring cause or not, during the period of the listing. In the case sub judice, Tower View was entitled to a commission for a sale taking place during the period of the listing only if it was the procuring cause of the sale as provided in the first provision of the fee portion of the listing agreement. Point of error one is overruled.

■ In point of error two, Tower View contends that the trial court erred in submitting an erroneous definition or instruction to the jury on "procuring cause" in conjunction with special issue number one. In support of its contention, appellant claims that "[t]his court, in *Zeller v. Chipman*, 474 S.W.2d 755 (Tex.Civ.App.—San Antonio 1971, no writ), has heretofore expressly approved the definition on 'procuring cause' requested by Tower View in this case. ... Instead, the Trial Court, over Appellant's objections, ... chose to give the jury an archaic and unintelligible definition found in *Settegast v. Timmins*, 6 S.W.2d 425 (Tex.Civ.App.—Beaumont 1928, writ ref'd). ..." Upon close reading of the *Zeller* opinion, however, one must conclude that this court did not "approve" an in-

struction in that case. Rather, this court merely stated that while the refused instruction had been specifically approved in the *Settegast* opinion, the instruction given by the court, although longer than the requested instruction, was sufficient in that it contained all the law applicable to the case. This court concluded that Zeller had no viable complaint as regards the instruction. *Zeller,* 474 S.W.2d at 758. We come to a similar conclusion in this case, in that the instruction on procuring cause submitted by the trial court was sufficient to apprise the jury of all the elements it needed to consider in rendering its verdict. Point of error two is overruled.

In points of error three and four, Tower View contends error in granting judgment for Hopkins when there was no evidence to support the jury's finding to special issue number one, or alternatively, that the jury's response was against the great weight and preponderance of the evidence. Special issue one was as follows:

### SPECIAL ISSUE NO. 1

DO YOU FIND FROM THE PREPONDERANCE OF THE EVIDENCE THAT TOWER VIEW, INC., BY AND THROUGH ITS AGENT JOHN CHIOVITTI, WAS THE PROCURING CAUSE OF THE SALE OF THE EDEN ROC APARTMENTS BY SAM B. HOPKINS TO JOSEPH E. GILMORE IN DECEMBER 1977?

ANSWER: IT WAS THE PROCURING CAUSE OR IT WAS NOT THE PROCURING CAUSE.

ANSWER: *It was not the procuring cause.*

### PROCURING CAUSE

"PROCURING CAUSE" IS THE CAUSE THAT IN A NATURAL AND CONTINUING SEQUENCE, UNBROKEN BY ANY INDEPENDENT INTERVENING CAUSE, PRODUCES THE SALE, AND WITHOUT WHICH THE SALE WOULD NOT HAVE OCCURRED.

A "no evidence" point of error may be sustained only if it is shown that, looking only to that evidence favorable to the jury's answer, there is no more than a scintilla of evidence to support the contested jury finding. *Garza v. Alviar,* 395 S.W.2d 821, 823 (Tex.1965). In reviewing the great weight point, this court must look at all of the evidence and sustain the point only if appellant can show that the jury's answer is clearly wrong and manifestly unjust. Calvert, *"No Evidence" and "Insufficient Evidence" Points of Error,* 38 TEX.L.REV. 361, 367–68 (1960). It is undisputed that Gilmore would not have purchased the property in question had it not been for the effort of appellant's agent Chiovitti. Further, the evidence shows that the other agent, Priakos, who wrote the "backup contract," prior to Gilmore's signing such contract, merely showed the property to Gilmore on one occasion.

That evidence aside, a broker is the procuring cause of the sale only if he produces, through his efforts, "a purchaser ... ready, able and willing to buy the property upon the contract terms...." *Goodwin v. Gunter,* 109 Tex. 56, 60, 185 S.W. 295, 296 (1916), *set aside on rehearing on other grounds,* 109 Tex. 56, 195 S.W. 848 (1917); *Maberry v. Julian,* 479 S.W.2d 770, 773 (Tex.Civ.App.—Dallas 1972, writ ref'd n.r.e.). In the case of a non-exclusive listing such as ours, so long as the owner remains neutral as between competing brokers, the owner is required to pay the commission to the first broker who produces a binding agreement for the purchase of the property by one ready, able and willing to purchase, even if another broker may have been the first to introduce the purchaser to the property and was instrumental in convincing the purchaser to buy the property. *Lyon v. Harmon,* 212 S.W.2d 491, 493–94 (Tex.Civ.App.—San Antonio 1948, no writ); *Heath v. Elliston,* 145 S.W.2d 243, 247 (Tex.Civ.App.—Amarillo 1940, writ dism'd judgmt. cor.). Mere effort in attempting to sell a parcel of property to a prospective purchaser does not alone entitle the broker to a commission.

*See Duncan v. Stevenson,* 120 S.W.2d 305, 308 (Tex.Civ.App.—Amarillo 1938, no writ).

 Gilmore testified that he told Chiovitti that he was interested in purchasing the apartments for Hopkins' $350,000.00 asking price but only if Hopkins was willing to convert the utility service so that each apartment was independently metered. The record before us does not contain an earnest money contract submitted by appellant on behalf of Gilmore offering to purchase the apartments.

Based on a review of only that evidence favorable to the verdict of the jury, we do not agree with appellant that there was no evidence supporting the jury's response to special issue one. Appellant's point of error three is overruled. Neither can we agree that the jury's response is so against the great weight and preponderance of the evidence so as to be wrong and unjust. Neither Tower View, nor its agent, Chiovitti, produced a purchaser *ready, able and willing* to purchase the property at the time of the initial negotiations with Gilmore. Further, Tower View never submitted an earnest money contract to Hopkins on Gilmore's behalf. Appellant's point of error four is overruled.

In points of error five and six, appellant argues that there is no evidence to support the jury's response to special issue number three or alternatively, that the jury's response was against the great weight and preponderance of the evidence.

Special issue three and the jury's answer thereto is as follows:

### SPECIAL ISSUE NO. 3

DO YOU FIND FROM A PREPONDERANCE OF THE EVIDENCE THAT PLAINTIFF, TOWER VIEW, INC., HAD ABANDONED AND TERMINATED ITS EFFORTS TO SELL THE EDEN ROC APARTMENTS TO JOSEPH E. GILMORE PRIOR TO NOVEMBER 16, 1977, THE DATE JOSEPH E. GILMORE SUBMITTED HIS EARNEST MONEY CONTRACT TO PURCHASE THE EDEN ROC APARTMENTS?

ANSWER: "IT HAD ABANDONED" OR "IT HAD NOT ABANDONED."

WE, THE JURY, ANSWER: *"it had abandoned."*

In support of its contention, appellant cites this court to the case of *Schwabe v. Kemp & Coldwell, Inc.,* 20 S.W.2d 273 (Tex.Civ.App.—El Paso 1929, writ ref'd). Appellant contends that the *Schwabe* opinion stands for the proposition that to prove abandonment, the appellee had to prove that there were "clear, unequivocal and decisive acts and intentions to make no further effort to sell the property...." Our reading of the case compels an entirely different conclusion. In that case, the court expressly stated that it was not deciding liability on the basis of abandonment as, in that case, the refusal to submit an abandonment issue was determined not to be error. *Id.* at 275. In the case of *Goodwin v. Gunter,* 109 Tex. 56, 185 S.W. 295 (1916), the supreme court stated:

A different state of case is presented and therefore a different rule prevails where the broker's effort with a particular buyer has, after fair opportunity and without any fault of the owner, come to naught, resulting in the failure and termination of his negotiation; and, later, the owner by direct and independent negotiation effects a sale to the same buyer, though upon the same terms originally authorized to the broker.

*Id.* at 61, 185 S.W. at 297.

 Chiovitti himself testified that his oral submission of Gilmore's offer to Hopkins was not accepted. The *Gunter* opinion refers to abandonment of a *buyer,* not the entire listing agreement. This view is reasonable in the case of a non-exclusive listing agreement as Hopkins could deal with and sell the property to whomever he desired. He was required to pay a commission to appellant only if appellant (1) *procured* a buyer during the initial term of the listing, or (2) if the property was sold within 180 days of the listing's expiration, to

anyone with whom appellant had negotiated during the initial listing term.

We find that there is more than a scintilla of evidence supporting the jury's answer to special issue three, and further, we find that the jury's answer was not so against the great weight and preponderance as to be manifestly wrong and unjust. Points of error five and six are overruled.

Accordingly, the judgment of the trial court is affirmed.