A. Behrooz **RAMESH** et al., Appellants,

v.

Gerald A. **JOHNSON** et al., Appellees.

No. A14-83-856-CV.

Court of Appeals of Texas, Houston (14th Dist.).

Nov. 1, 1984.

B. Edward Williamson, Houston, for appellants.

Daniel F. Shank, Houston, for appellees.

Before J. CURTISS BROWN, C.J., and CANNON and DRAUGHN, JJ.

## OPINION

J. CURTISS BROWN, Chief Justice.

This is an action for broker's commissions by Gerald A. Johnson (Johnson or appellee) against A. Behooz Ramesh (Ramesh or appellant), a buyer of real estate. The trial court entered judgment for $28,-000 in favor of appellee Johnson (the broker). Ramesh asserts two points of error on appeal, both of which challenge the application by the trial judge of the law of "procuring cause" to the facts of the case. We affirm.

The facts are largely undisputed. In January of 1979, Ramesh asked appellee Johnson to find an apartment complex in Houston with which Ramesh could effectuate a tax-deferred exchange of real estate. Ramesh had already contracted to sell an apartment complex in Dickinson, Texas which would serve as the "front end" of the exchange. His broker for the Dickinson transaction was Mr. Eugene Rushton.

Johnson succeeded in locating an apartment complex called the Alta Vista apartments, then owned by the Municipal Engineering Company (Municipal). After a period of negotiations, Johnson brought Ramesh and Municipal together on terms under which Ramesh would pay a $532,000 purchase price for the apartments and $28,000 in commissions to Johnson "at closing." This agreement was reduced to writing in a contract dated March 29, 1979.

The contract granted the buyer the right to rescind the transaction if, on physical inspection of the apartments, he found them unsatisfactory. Dr. Ramesh conducted such an inspection and found that the roof of the complex was in need of repair.

Concerned that the total purchase price, and especially his immediate cash outlays, should reflect the cost of roof repairs to him, Ramesh asked Johnson to submit an offer to Municipal lowering the purchase price from $532,000 to $500,000. One effect of this new offer, if accepted, would have been to lower Johnson's commission.

Johnson did not carry through with this offer. He did, however, draft a letter on behalf of Ramesh rescinding the original contract according to the terms of the inspection clause. Appellant signed the letter, which Municipal received and accepted.

Almost immediately thereafter, and without Johnson's knowledge, Ramesh contacted Eugene Rushton, the broker for the Dickinson transaction, and asked him to submit a $500,000 offer to Municipal which provided for a $10,000 commission to Rushton. Rushton did so, and the offer was rejected by Municipal, as was a later offer of $510,000.

A sale was finally consummated on April 18, 1979, one week after the signing of the letter terminating the first contract. The purchase price under the final agreement was $532,000 payable under a split financing structure (partly an assumption of Municipal's indebtedness, partly a new note payable to Municipal).

This differed from the original (March 29) contract in that the original contract contemplated a unified "wraparound" note payable over a longer term, and at slightly higher interest, than the two notes later agreed upon. Thus Ramesh assumed a significantly lower overall interest obligation under the second contract. Ramesh agreed to pay Eugene Rushton $10,000, only $2,000 of which was in cash, for Rushton's role in the post-termination negotiations.

The jury's findings based on the above facts can be summarized as follows:

1) that appellee had been the efficient, procuring cause of the purchase by Ramesh of Alta Vista;

2) that Ramesh had not terminated the original contract in bad faith in order to deprive appellee of a commission;

3) that the terms of the original (March 29) contract and those of the April 18 contract were not substantially the same;

4) that appellee had not abandoned or waived his right to a commission.

Appellant contends in his first point of error that even with a finding by the jury that the broker was the procuring cause of the purchase, he is not entitled to a commission because the contract of March 29, having been terminated, does not satisfy the statutory requirement of a writing.[1] While it is true that Art. 6573a, § 20(b) requires that an action by a broker for commission must be founded on a written agreement, we believe that the contract of March 29 fully meets appellee's burden under the statute.

Appellant urges us to rule that a broker's right to a commission hinges on his continued employment through the time of the final consummation of the purchase.

---

**1.** TEX.REV.CIV.STAT.ANN. art. 6573a, § 20(b) provides as follows:

An action may not be brought to a court in this state for the recovery of a commission for the sale or purchase of real estate *unless the* *promise or agreement* on which the action is brought, or some memorandum thereof, *is in writing* and signed by the party to be charged or signed by a person lawfully authorized by him to sign it. (Emphasis added).

This contention is contrary to well-established Texas law. *Goodwin v. Gunter,* 109 Tex. 56, 185 S.W. 295, 296 (Tex.1916); *Volkmann v. Wortham,* 189 S.W.2d 776, 779 (Tex.Civ.App.—San Antonio 1945, writ dism'd); *McPherson v. Osborn,* 475 S.W.2d 804 (Tex.Civ.App.—Amarillo 1971, no writ); *Kelley v. Dunn,* 620 S.W.2d 825, 829 (Tex. Civ.App.—Tyler 1981, no writ); *Fuess v. Mueller,* 630 S.W.2d 715, 717 (Tex.App.—Houston [1st Dist.] 1982, no writ).

■ The validity of a written agreement under Art. 6573a § 20(b) is to be determined as of the time of procurement, not consummation. Unless otherwise agreed, the broker has satisfied the statutory requirement of a writing and is entitled to a commission according to the contract if, while it is in force, he procures a seller from whom his client directly makes a purchase on terms satisfactory to himself, though different from those limited to the broker. *Fuess v. Mueller,* 630 S.W.2d 715, 717 (Tex.App.—Houston [1st Dist.] 1982, no writ). In the instant case such procurement is evidenced by both the March 29 contract which, while it was in force, bound Municipal to sell, and the April 18 contract by which Ramesh directly purchased the property.

■ Where, as here, the requirements of a procurement and a writing have been satisfied, the courts have regularly treated the broker's rights under the contract as continuing in existence for a reasonable time after its termination by mutual rescission of the purchaser and owner so as not to deprive the broker of the commission he has earned. See, e.g., *Fuess v. Mueller,* 630 S.W.2d 715, 717–8 (Tex.App.—Houston [1st Dist.] 1982, no writ) (17 days); *Stitt v. Royal Park Fashions,* 546 S.W.2d 924, 926–7 (Tex.Civ.App.—Dallas 1977, writ ref'd n.r.e.) (the entire duration of an 8-year lease where commission was payable concurrently with rentals); *Zeller v. Chipman,* 474 S.W.2d 755, 756–8 (Tex.Civ.App.—San Antonio 1971, no writ) (24 days; court remanded case on other grounds);

*Cass v. Hurst,* 329 S.W.2d 450 (Tex.Civ. App.—San Antonio 1959, no writ) (5 months; reversal of a summary judgment in favor of owner); *Morgan v. Letellier,* 677 S.W.2d 165 (Tex.App.—Houston [1st Dist.] 1984, writ requested) (3 months). Cf. *Edwards v. Parker,* 438 S.W.2d 141 (Tex. Civ.App.—Dallas 1969, no writ) (delay in excess of one year precludes recovery by broker); *Maberry v. Julian,* 479 S.W.2d 770 (Tex.Civ.App.—Dallas 1972, no writ) (2 years delay precludes recovery).

■ In the present case only a week separated the termination of the March 29 contract and the consummation of the purchase. We therefore believe these facts fall within the group of cases which extend the duration of the broker's rights.

■ Appellant further contends, however, that the March 29 contract was subject to a condition and, that condition not having been met, appellee is not entitled to a commission. We agree with appellant that where the parties to a contract make the payment of a commission expressly contingent on a closing or other event, and that event does not occur, no obligation exists to pay the commission. This rule, however, is inapplicable to the present case.

■ The phrase in the March 29 contract making the commission payable "at closing" did not, in our opinion, make the commission contingent on consummation, but instead merely fixed a time for payment. The court in *McPherson v. Osborn,* 475 S.W.2d 804 (Tex.Civ.App.—Amarillo 1971, no writ) faced precisely this question and interpreted "at closing" exactly as we do. In *McPherson,* as in this case, the defendant himself admitted that the closing fixed a time for payment. *McPherson,* 475 S.W.2d at 807.

Finally, this case is unlike those cases cited by appellant in which the broker had not earned a commission because a condition necessary to the *formation* of a contract failed to occur.[2] Here, a valid con-

**2.** E.g. *Roquemore v. Talley,* 451 S.W.2d 319 (Tex. Civ.App.—Dallas 1970, writ ref'd n.r.e.) (failure

tract existed between purchaser and owner which adequately evidenced a successful procurement as found by the jury. Accordingly, appellant's first point of error is overruled.

In his second point of error appellant challenges the form in which the instruction regarding "procuring cause" was given to the jury.

The trial court, in submitting special issue number one, defined procuring cause as follows:

"that cause which in a natural and continued sequence, unbroken by any new independent intervening cause, produces the event without which it would not have occurred."

The court thereupon defined "new independent intervening cause":

"the act or omission of a separate and independent agency not reasonably foreseeable by a party exercising reasonable care, which destroys the causal connection, if any, between the act or omission inquired about and the occurrence in question, and thereby becomes the immediate cause of such occurrence."

■ Appellant contends that the trial court erred in excluding *foreseeable* intervening events or causes from its definition of "new and independent intervening cause." Specifically he states that the court's definition of "new and independent intervening cause" prevented the jury from considering the good-faith termination by Ramesh of the original contract and his subsequent purchase of Alta Vista through another broker as elements constituting a new and independent intervening cause of the purchase. We disagree.

The period between April 10 and April 18 was marked by three major events: Ramesh's discovery of the weaknesses in the roof, the termination of the original contract, and the re-negotiation and final consummation of the purchase by Ramesh through Rushton. The need for roof repairs cannot be regarded as an intervening cause of the purchase. On the contrary, it stood in the way of the purchase. Similarly, a termination of a contract of purchase cannot be a cause of the purchase under any conceivable jury instruction. Thus the only real issue presented here is whether the jury was afforded sufficient opportunity to consider the role of the second broker in the transaction.

In *Zeller v. Chipman*, 474 S.W.2d 755 (Tex.Civ.App.—San Antonio 1971, no writ), the court reversed an award of a broker's commission based on an improper jury instruction. The *Zeller* trial court had baldly asserted in its instruction regarding procuring cause: "[I]t is *immaterial* that the transaction is finally consummated by another broker." (Emphasis added). This constituted reversible error because it wholly prevented the jury from assessing the role of the second broker in the transaction.

*Zeller* is distinguishable from the present case. The first half of the definition of procuring cause given below imposed a stiffer test for appellee to meet than the definition given by the *Zeller* trial court. The definition in *Zeller* only required the broker to have been a *sine qua non* of the transaction to be considered its procuring cause.[3] Here, as noted above, the defini-

to gain cooperation of City of Dallas left contract unformed); *Toland v. Kaliff*, 435 S.W.2d 260 (Tex.Civ.App.—San Antonio 1968, no writ) (no contract had been formed); In *O'Boyle v. DuBose-Killeen Properties*, 430 S.W.2d 273 (Tex. Civ.App.—Dallas 1968, writ ref'd n.r.e.), the broker had not procured a buyer ready to purchase on terms acceptable to the seller. Likewise *Bayer v. McDade*, 610 S.W.2d 171 (Tex.Civ.App.—Houston [1st Dist.] 1980, writ ref'd n.r.e.). In *Taylor v. Neal*, 467 S.W.2d 197 (Tex.Civ.App.—Amarillo 1971, writ dism'd), the contract was made contingent on the consummation of another contract involving the same seller. The

latter contract was never completed because it in turn was contingent on an event which never occurred. *Friedlander v. Christianson*, 320 S.W.2d 404 (Tex.Civ.App.—Houston 1959, no writ) (involved a listing agreement, not a valid contract between purchaser and owner.)

**3.** The *Zeller* trial court defined procuring cause as follows:

"[S]uch act or acts, if any, in bringing the buyers and sellers together in connection with the sale of the property in question *which so far constructed* to bringing about the sale that

tion went much further, requiring the broker to have been a *sine qua non* of the transaction and also to have actually *produced the event.*

Irrespective of what incidental effect the definition of intervening cause given below may have had on the jury, then, the definition of procuring cause literally forced the jury to assess the role of the second broker, since under this definition either appellee produced the event or Rushton did. Stated conversely, the jury, by finding appellee to have produced the event (the transaction), impliedly found an absence of intervening causes, foreseeable or not. We therefore, do not believe that the trial court's instruction on procuring cause "was reasonably calculated to cause and probably did cause the rendition of an improper judgment in the case." TEX.R.CIV.P. 434; *Knight v. Hicks*, 505 S.W.2d 638, 641 (Tex. Civ.App.—Amarillo 1974, writ ref'd n.r.e.). Accordingly, appellant's second point of error is overruled, and the judgment of the trial court is affirmed.

*but for such act or acts ... the sale would not have been consummated."* (Emphasis added)

*Zeller v. Chipman,* 474 S.W.2d at 755.