**HENRY S. MILLER COMPANY, Plaintiff,**

v.

**Konrad ULMER, Defendant.**

**Civ. A. No. H–88–306.**

United States District Court, S.D. Texas, Houston Division.

Dec. 19, 1988.

Joseph O. Slovacek, Hoover Bax & Shearer, Houston, Tex., for plaintiff.

Edward L. Friedman, Liddell, Sapp, Zivley & Hill, Houston, Tex., for defendant.

MEMORANDUM ON SUMMARY JUDGMENT

HUGHES, District Judge.

If the lease has a ten-year term with an option allowing the tenant unilaterally to

terminate the lease between five and one-half years and six years into the lease, does the landlord owe the broker a commission on a five-year or a ten-year lease? The court will grant a summary judgment for the broker, awarding him a commission for the ten-year term.

*Facts.*

Konrad Ulmer entered into an exclusive listing agreement with Henry S. Miller Co. to lease a commercial building owned by Ulmer. The agreement authorized Miller to lease the building on Ulmer's approval of the terms; in exchange, Miller would earn a commission of four percent of the total rent. After Ulmer approved a tenant procured by Miller, Ulmer refused to pay a real estate commission based on a ten-year lease because of the early termination option in the lease.

By the listing agreement, Miller was to get four percent of the total base rental for the first ten years of the primary lease term, with one-half due upon execution and one-half due upon occupancy by the tenant. The agreement was silent about a reduction in the commission on a lease with an option for early termination.

*Analysis.*

The owner owes the broker a commission under the listing agreement if the broker obtains a tenant whom the owner later accepts, even if the terms of the lease yield the owner less than initially anticipated. *See Fuess v. Mueller*, 630 S.W.2d 715, 717 (Tex.Civ.App.—Houston [1st Dist.] 1982, no writ); *Frost v. Texas Gulf Sulphur Co.*, 17 S.W.2d 121 (Tex.Civ.App.—Beaumont 1929, writ ref'd). Ulmer either could have insisted on a provision in the listing agreement to reduce the commission or refused to approve the lease with the option. He did neither.

The prospect that the tenant might terminate the lease early under the option is not the only event that might limit payments to Ulmer under the lease. For example, bankruptcy of the tenant during the first year of the lease would likely reduce the gross rentals paid to Ulmer; this contingency does not entitle Ulmer to reduce the commission to Miller. Similarly, the tenant's exercise of the option has no effect on the calculation of Miller's commission.

Ulmer contends that if he initially paid a commission based on a ten-year lease, it would be a windfall to Miller, but he offers that if the tenant does not exercise the option to terminate the lease, then he will pay Miller the five year balance. To support this outcome, Ulmer cites *Laughlin v. Terry*, 110 S.W.2d 838 (Mo.Ct.App.1937). In *Laughlin*, the court denied a commission computed on the maximum amount of rentals payable on a two-year lease which gave the tenant the option to terminate at any time. The case is distinguishable.

The listing agreement in *Laughlin* said that "a commission of five per cent of the gross amount of rentals" would be payable to the broker "upon consummation of any lease." The broker's commission accrued as the term was extended by continued occupancy, which was the only way to ascertain the term. Similarly, here, Ulmer could have retained a broker through a listing agreement that limited payment of the commission to a percentage of the rent as paid. The listing agreement, however, says that the commission is payable in two installments on these occasions: signing of the lease and occupancy of the property.

The parties have found no authority in Texas to support Ulmer's claim that payment of the commission at the beginning of the lease should be enforced only if security is given by Miller to refund the unearned commission in the event the tenant exercises the option. Since under the unambiguous terms of the agreement Miller earned the ten-year commission on occupancy by a tenant whom Miller had procured, no refund will ever be due, and no security is required.

As Ulmer's use of words like "windfall" suggests, Ulmer argues that Miller's compensation for procuring this tenant may turn out to be unfair to Ulmer. "Unreasonable" seems to be more accurate than "unfair", but in any event, Ulmer is stuck with the deal he made.

To argue that we must enforce only reasonable contracts or contracts which reasonable men enter into, mistakes our function. We can and do enforce unreasonable contracts if they be clear. Unreasonable men make reasonable contracts and reasonable men may make unreasonable contracts. We dissect the words for meaning; we do not resect them.

*Howell v. Union Producing Co.*, 392 F.2d 95, 115 (5th Cir.1968).

*Conclusion.*

A tenant was procured by Miller on terms expressly approved by Ulmer. The performance of the duties under the exclusive listing agreement entitled Miller to a commission calculated under that lease. The agreement is unambiguous, and this court may not insert what the parties could, but did not, agree to include in its terms, despite any unexpected effects. *Johnson v. Dick*, 281 S.W.2d 171 (Tex.Civ. App.—San Antonio, 1955, no writ).

Henry S. Miller will recover from Konrad Ulmer the $46,520 due under the listing agreement and $10,000 for attorney's fees.

### FINAL JUDGMENT

It is adjudged that Henry S. Miller Company recover from Konrad Ulmer:

1. $46,520 due under the listing agreement;
2. $10,000 attorney's fees;
3. Costs of court;  and
4. Postjudgment interest at 9.20% per annum.