## The RECRUITER, INC., Plaintiff-Appellee,

v.

## BRENCO AUTOMATION CENTER, INC., Defendant-Appellant.

### No. 83–1223.

Court of Appeals of Iowa.

June 26, 1984.

Gene R. LaSuer of Davis, Hockenberg, Wine, Brown & Koehn, Des Moines, for defendant-appellant.

David D. Nelson of Wimer, Hudson, Flynn & Neugent, P.C., Des Moines, for plaintiff-appellee.

Heard by SNELL, P.J., and SCHLEGEL and SACKETT, JJ.

SNELL, Presiding Judge.

The issue in this case is whether plaintiff, The Recruiter, Inc., an employment agency, is legally entitled to payment for services performed for defendant pursuant to a contract between the parties. The Recruiter is entitled to a fee if it performed services under its contract that resulted in the employment of the person referred. We therefore focus on the services and the result.

■ This is an action at law. As such, we review the record to determine if there is substantial evidence to support the decision of the trial court. *Blunt, Ellis & Loewi, Inc. v. Igram,* 319 N.W.2d 189, 192 (Iowa 1982); Iowa R.App.P. 14(f)(1) (1981). If that quantum of evidence exists, we are bound thereby.

Defendant, Brenco Automation Center, Inc., contracted with plaintiff to find a person to work as a systems analyst. Arrangements were made over the phone and a letter of confirmation was sent on May 5, 1981, which stated:

> This is to acknowledge our telephone conversation of this date wherein, THE RECRUITER agreed to screen candidates presently on file (applicants) or to search out other candidates (recruits) and to refer those candidates to you which are deemed qualified to fill the position we discussed today.
>
> In consideration for the services rendered by THE RECRUITER, and providing that you employ one of the referred candidates, you have agreed to pay THE RECRUITER a fee in accordance with the Compensation Schedule listed below, which fee shall be payable on or before the day the candidate commences employment with your Company.

The contract does not contain a duration clause.

■ The Recruiter referred several candidates to Brenco, including Richard Smith. The president of Brenco, Jim Nevens, interviewed Smith in early June 1981. Brenco's systems and programming manager, Gene Ketchmark, interviewed Smith again in August 1981. Brenco needed someone who could develop new systems to be used with the systems then being used by Brenco. In a letter dated September 9, 1981, four months after the agreement between The Recruiter and Brenco for payment of a fee, Brenco notified Smith that he had not been accepted for the job available. The major reason for this decision was Smith's lack of banking experience. At this point, Smith considered the question of his employment by Brenco ended and consequently accepted a position with another employer. For Brenco, the matter was ended by its rejection letter and its subsequent change of president and systems and programming manager. The question we face is whether any obligations either survive these events or were later revived.

In 1982, Brenco underwent some reorganization of positions and personnel. A new president and a new systems and programming manager were appointed. It was decided that Brenco would purchase new computer systems and that these new systems would have to be incorporated into the existing telecommunication system. Brenco's personnel at that time did not include anyone with the skill to coordinate these systems. The new systems and programming manager, Herbert Ruble, had worked with Smith for three or four years in the past and knew that he had the necessary skills. After checking with Smith to see if he had an interest in the position, Ruble recommended Smith to Ronald Long, Brenco's new assistant manager. Although Smith talked with Long about the second job, he did not know Long was employed by Brenco when he sought employment in 1981. Neither Ruble nor Long, who were responsible for Smith's being hired, were aware that Smith had previously been interviewed by Brenco. It is undisputed that Brenco's new president, Phillip Risley, had all previous resumes of job applicants removed from the files and began hiring new individuals. The only remaining papers of Smith's were his job application and a copy of Brenco's rejection letter. The Recruiter had no input into either of the decisions made by Ruble and Long to interview Smith or to hire him. No discussions concerning Smith were held with any of the previous Brenco employees who had interviewed Smith the previous year. The evidence shows that, while there are some similarities between the first and second jobs for which Smith was interviewed, they were different jobs neverthe-

less. The job for which Smith was hired in 1982 was different enough from the job for which Smith interviewed in 1981 that it is quite possible Smith's skills may have been useful for one but insufficient for the other. Smith began working for Brenco on July 26, 1982.

The Recruiter billed Brenco for the service of placing Smith with the company. Brenco refused to pay on the ground that it did not hire Smith as a result of The Recruiter's services. A suit for payment was filed by The Recruiter. The court found Brenco contractually obligated to pay The Recruiter a referral fee of $7,725.00, concluding that "it would be a dangerous precedent in determining corporate liability if a corporation could avoid payment of a placement fee by claiming a change in its hiring personnel." Brenco argued that the contract had not been performed within a reasonable time because more than a year had elapsed between the agreement on May 5, 1981, and Smith's employment on July 26, 1982. The trial court found, however, that the contract had been performed within a reasonable time because, even if one year was a reasonable limitation, only eleven months had elapsed between Smith's second interview with Brenco and Smith's employment.

Although the trial court's concern about setting a dangerous precedent has merit, we do not believe this to be applicable to the case. The job opening in 1981 was for a different position than the one for which Smith was hired in 1982. The Recruiter had no input regarding the second job. Moreover, there is no evidence of fraud, collusion, or deceitful actions by Brenco that would suggest an attempt to evade its contractual obligations. Considering all the circumstances of Smith's ultimate employment, we find that there is not substantial evidence to support the trial court's finding that The Recruiter had performed services under its contract with Brenco entitling it to a fee.

REVERSED.