**MAL SPINRAD OF ST. LOUIS, INC., Appellant,**

v.

**OLSEN–STELZER BOOT & SADDLERY CO., Appellee.**

No. 2–85–169–CV.

Court of Appeals of Texas, Fort Worth.

Aug. 21, 1986.

Joe E. Shaddock, Wichita Falls, for appellant.

Lynch, Chappell, Allday & Alsup and Brittain D. Monts, Midland, for appellee.

Before BURDOCK, HILL and HUGHES (Retired, Sitting by Assignment), JJ.

## OPINION

HUGHES, Justice (Retired, Sitting by Assignment).

Mal Spinrad of St. Louis, Inc., has appealed the directed verdict judgment of the trial court rendered in favor of Olsen-Stelzer Boot & Saddlery Co., appellee, and against it in its suit based on contract for services rendered to appellee.

We affirm.

Appellant is an employment agency that specializes in foot-wear industry personnel. Appellee is a custom boot-making business. Appellant mailed appellee an unsolicited flyer containing brief resumes of numerous shoemaking personnel. In response to the flyer, Travis Bond, who was appellee's General Manager, contacted appellant by phone and requested additional information about plant supervisors. At that time, appellant explained its fee schedule and that no payment would be required until appellee hired one of the applicants sent to them by appellant. Later, appellant sent Bond a number of "blind" resumes (names and addresses of applicants omitted), one of which belonged to Clyde Dabbs. Also included in this mailing was a "New Friend Letter" introducing appellant's employment agency and a "contact form" on one Bobby Gist. The "contact form" included information about appellant's fee schedule and terms.

Later, appellant phoned Bond. Bond requested more information on some of the blind resumes. Appellant then sent Bond a "contact form" and open resume on one Jim Worland followed by a phone call to Bond. During this conversation Bond expressed an interest in Dabbs' blind resume. Appellant proceeded to send Bond Dabbs' name, address and resume. The cover letter attached to the resume stated that a placement fee would be due if the applicant was hired within two years of the date of the letter, which was September 24, 1981.

Appellant never attempted to arrange an interview between Dabbs and appellee. Further, neither appellant nor appellee contacted Dabbs.

On November 16, 1981, Dabbs phoned Bond and said he had heard about a possible job opening with appellee from someone at United Shoe Machine. An interview was arranged and Dabbs was hired by appellee on January 4, 1982.

Thereafter, appellant sent an invoice to appellee demanding payment of $7,500.00 (a percentage of Dabbs' $30,000.00 annual salary). After appellee refused to pay, appellant filed this suit.

At trial, after appellant rested and before appellee made its defense, appellee presented its oral motion for a directed verdict. Appellee's motion contained three grounds: (1) that the recordings of telephone conversations between appellant and Travis Bond were not properly authenticated and thus, were not admissible; (2) that appellant failed to introduce any evidence to show Bond had authority to enter into a contract with appellee; and (3) that the record was devoid of evidence that appellant was the procuring or producing cause of appellee's hiring of Clyde Dabbs.

Thereafter, the trial court ruled the telephone recordings were admissible and then, after a protracted discussion with counsel outside the presence of the jury, directed a take nothing verdict for appellee. The judgment entered is worded generally and does not state the grounds on which it is based. However, the statement of facts shows the judge granted the motion because he felt appellant had failed to show Bond had the authority to enter into a contract with appellee.

In its first three points of error appellant asserts trial court error in granting appellee's motion for directed verdict for the reason that appellant had proved a prima facie case entitling it to judgment. More particularly, appellant urged that it had proved as a matter of law that Travis Bond, General Manager of appellee, entered into a contract with it "for service *in obtaining* the employee, Clyde Dabbs." (Emphasis ours.) The phrase "for service *in obtaining* the employee, Clyde Dabbs" is appellant's own phraseology. It is appellant's contention that it is entitled to 25% of

Dabbs' first year's salary (he only worked for appellee seven months) because its contract submitted to and accepted by Bond provided that anyone hired by appellee within two years of the date of submission of his resume to appellee would render appellee liable for the employment fee.

"Not so" says appellee who asserts that, even if there were a contract, there was no proof made that appellant had anything to do with obtaining Dabbs' employment with appellee and that such was a necessary ingredient in their lawsuit. In this connection, appellee cited three cases, all out of state, where appellate courts had refused an employment agency's fees where they did not show they were actually involved in procuring the employee. *Nicastro Associates, Inc. v. C.F. Wooding Co.,* 5 Conn. App. 244, 497 A.2d 1020, 1022 (1985); *Recruiter, Inc. v. Brenco Automation Center, Inc.,* 354 N.W.2d 245, 246–47 (Iowa Ct.App.1984); *Madrid v. Lawson,* 446 So.2d 837, 838–39 (La.Ct.App.1984).

There appear to be no Texas cases on this employment contract point but there are real estate broker cases in Texas holding that the broker must be the procuring cause of a sale to be entitled to a commission. *See Tower View, Inc. v. Hopkins,* 679 S.W.2d 632, 635 (Tex.App.—San Antonio 1984, writ ref'd n.r.e.); *Henry S. Miller Residential Service v. Arthur,* 671 S.W.2d 670, 671–72 (Tex.App.—Dallas 1984, no writ); *Ogden v. Yates' Estate,* 154 S.W.2d 215, 217–18 (Tex.Civ.App.—Austin 1941, writ ref'd w.o.m.)

■ Appellant did not try to show that Dabbs was hired as a result of its efforts, and admitted that it did not have an exclusive listing. It put its reliance on *Sealy Oil Mill & Mfg. Co. v. Bishop Mfg. Co.,* 235 S.W. 850 (Tex.Comm'n App.1921, opinion adopted), to substantiate its claim that Bond, as General Manager of appellee, bound appellee to its asserted contract on Dabbs, and that it was unnecessary to show a hiring as a result of its efforts. *See id.* at 852. We disagree.

■ The judgment in this case is broadly worded and is not narrowed to a specific ground and, therefore, may be on alternative bases. Thus, even if Bond was found to have contractual authority in this matter, the lack of proof that appellant was the producing cause of appellee's hiring of Clyde Dabbs, would be sufficient to uphold the trial court's judgment and we so hold. *See Petroscience Corp. v. Diamond Geophysical, Inc.,* 684 S.W.2d 668, 669 (Tex. 1984); *McKelvy v. Barber,* 381 S.W.2d 59, 61–62 (Tex.1964); *Monk v. Dallas Brake & Clutch Service,* 697 S.W.2d 780, 783 (Tex. App.—Dallas 1985, writ ref'd n.r.e.). We overrule points of error one, two and three.

■ We also overrule point of error four in which appellant asserts error by the trial court "in granting Defendant's Motion for Directed Verdict against Plaintiff." In particular, the appellant complains that the trial court would not grant his motion to reopen and meet the "grounds of the motion." The court had stated that he was of the opinion that authority had not been shown in Bond as General Manager of appellee to contract with appellant. Discussion on the reopening all centered on appellant's lawyer being allowed to subpoena or obtain the presence of Frederick T. Roper, an officer of appellant corporation and Bond, all for the stated purpose of proving Bond's authority (neither side had called Bond on the case in chief).

Nothing was mentioned about the third stated ground of appellee's motion for the directed verdict. The evidence was undisputed that Dabbs came to work for appellee because of a source totally unrelated to any efforts made by appellant. Appellant's posture throughout the trial was to ignore the necessity of its showing it had anything to do with Dabbs' hiring. It is apparent that reopening would not change this posture nor add any evidence to show appellant had any producing effect on Dabbs' hiring.

We affirm.